Nicholas Keith Christian, Plaintiff In Pro Se
72 N. Buena Vista Ave.
San Jose, CA 95126
(408) 940-2424
christian.nicholask@gmail.com

Dr. Cheryl Lam, Plaintiff In Pro Se
72 N. Buena Vista Ave.
San Jose, CA 95126
(408) 421-7162
cheryl16@gmail.com

**FILED**

APR 28 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RECEIVED
2026 APR 28 16:02
NO. DIST. OF CA.
CLERK, US DISTRICT COURT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS CHRISTIAN, an individual; and CHERYL LAM, Ph.D., an individual,<br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE, a California municipal corporation; COUNTY OF SANTA CLARA, a California public entity; HANNAH ODEKIRK, JOSEPH HATFIELD, JOANNE TRACEY, JEAN NGUYEN, MARILYN C. UNDERWOOD, and SONIA WILLS, in their individual and official capacities; GERARD F. KEENA II, BRANDON CARR, and JORGE VIZCAINO, in their individual capacities,<br>Defendants. | Case No. **C. 26 03708** **VKD**<br><br>**VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF**<br><br>**(42 U.S.C. § 1983;**<br>**28 U.S.C. § 1746)**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.   This is a civil rights action brought under 42 U.S.C. § 1983 and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs Nicholas Christian ("Christian") and Cheryl Lam, Ph.D. ("Dr. Lam") seek damages, injunctive relief, and declaratory relief arising from a coordinated, retaliatory receivership scheme designed to unlawfully encumber and seize Plaintiffs' primary residence at 72 North Buena Vista Avenue, San Jose (the "Property").

2. The gravamen of this Complaint is that Defendants, comprising municipal officials and private actors working in joint concert, prosecuted a state-court receivership under California Health and Safety Code § 17980.7 that was void ab initio. Defendants initiated the underlying administrative action without the mandatory law-enforcement predicate required by Health and Safety Code § 25400.11, and did so in direct retaliation for Plaintiffs' protected First Amendment activity.

3. As documented in the Receiver's own billing records (Invoice No. 13335), Defendants engaged in 77 days of pre-filing coordination to engineer a false procedural emergency. This coordination included the issuance of a Notice to Abate with a facially impossible compliance deadline and the pre-jurisdictional approval of appointment papers by the intended Receiver.

4. Defendants' conduct constitutes a fraud on the court and a denial of access to the courts. While the underlying criminal investigation was dismissed for total insufficiency of evidence on August 5, 2025, Defendants utilized the civil receivership process to bypass constitutional protections, resulting in the unauthorized recording of a $125,000 Deed of Trust against the Property.

5. Christian and Dr. Lam have been physically excluded from their home by government action for 900 days. Plaintiffs now bring this action to halt the ongoing deprivation of their property interests and hold Defendants accountable for an orchestrated abuse of the legal process.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 2

8. Assignment to the San Jose Division is proper under Civil Local Rule 3-2.

## PARTIES

9. Plaintiff Christian is a resident of Santa Clara County and has proprietary and possessory interests in the Property.

10. Plaintiff Dr. Lam is a resident of Santa Clara County, California, and has proprietary and possessory interests in the Property.

11. Defendant City of San Jose ("the City") is a California municipal corporation liable under *Monell*.

12. Defendant County of Santa Clara ("the County") is a California public entity liable under *Monell*.

13. Defendant Hannah Odekirk ("Odekirk") is a Deputy City Attorney, sued in her individual and official capacities.

14. Defendant Joseph Hatfield ("Hatfield") is a City Code Enforcement Officer, sued in his individual and official capacities.

15. Defendant Joanne Tracey ("Tracey") is a City Code Enforcement manager, sued in her individual and official capacities.

16. Defendant Jean Nguyen ("Nguyen") is a County DEH specialist, sued in his individual and official capacities.

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 3

17. Defendant Marilyn C. Underwood ("Underwood") is the Director of DEH, sued in her individual, official, and supervisory capacities.

18. Defendant Sonia Wills ("Wills") is Santa Clara County Counsel, sued in her individual and official capacities.

19. Defendant Gerard F. Keena II ("Keena") acted as a joint actor with the state and is sued in his individual capacity.

20. Defendant Brandon Carr ("Carr") acted as a joint actor with the state and is sued in his individual capacity.

21. Defendant Jorge Vizcaino ("Vizcaino") acted as a joint actor with the state and is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### A. Record of No Manufacturing

22. On November 9, 2023, a search warrant was served by HSI at the Property. Personnel from the DEA, FBI, and SJFD HAZMAT were among a larger contingent of law enforcement on scene. None found evidence of manufacturing, nor substantial evidence to adopt a case.

23. SJFD Hazmat Report No. 23-3139060 noted no active lab processes.

24. Dr. Lam was never charged with a crime. Christian was charged with crimes unrelated to manufacturing, all of which were dismissed for lack of evidence on August 5, 2025.

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 4

### B. Missing Statutory Predicate

25.    California Health and Safety Code §§ 25400.18 and 25400.19 condition the local health officer's authority to act on prior receipt of notification from a law enforcement agency of contamination, known or suspected contamination, or potential contamination of property by methamphetamine or fentanyl laboratory activity. Without that notification, the statutory chain of authority does not begin.

26.    No such notification has been produced by the County, DEH, or the City. On information and belief, no such notification was ever issued.

27.    Every administrative action taken by the County and the City downstream of the November 9, 2023 search, including the cleanup order, the Notice to Abate, and the receivership, was therefore ultra vires.

### C. The Pretextual City Abatement

28.    By the autumn of 2025, the County's regulatory posture against the Property had collapsed. No statutory predicate had been produced. No criminal charges had been brought against either Plaintiff. The criminal case against Christian had been dismissed.

29.    On October 15, 2025, Plaintiffs filed Government Code § 910 tort claims with the County, putting both the County and the City on notice of significant liability arising from the unauthorized exclusion of Plaintiffs from the Property.

30.    Nine days later, on October 24, 2025, Defendant Odekirk began coordinating with Defendant Keena to construct a state-court receivership against the Property.

31.    The City had no live nuisance to abate. The Property had been vacant under government exclusion for nearly two years. The City had conducted no inspection, made no finding

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 5

of substandard housing conditions, and identified no ongoing activity at the Property requiring abatement.

32.    To manufacture an appearance of a City predicate, Odekirk caused a Notice and Order to Abate Nuisance to be issued and served on Plaintiffs on December 15, 2025. The Notice contained nine purported charges. Charges 1 through 8 were vague, repetitive recitals describing no specific condition, conduct, or evidence. Charge 9 affirmatively alleged that Plaintiffs were currently occupying the Property and contaminating neighboring properties. That allegation was false. At the time of issuance, Plaintiffs had been excluded from the Property by continuous government action for 772 days.

33.    The Notice bore a compliance deadline of "January 2, 2025," eleven months before the Notice itself was signed. Compliance was physically impossible at the moment of issuance.

34.    The Notice was not an abatement order. It was a trigger document for a receivership filing whose date was already locked.

35.    The City of San Jose lacked statutory authority to obtain the receivership it sought. The substance of the relief was methamphetamine-cleanup receivership, predicated on County allegations and County testing, relief the County itself was not authorized to obtain by receivership under the statutory framework governing methamphetamine contamination.

36.    The 77 days of pre-filing coordination documented in Receiver's Invoice No. 13335 were the bridge construction: a City-filed receivership engineered to import a failing County matter into a court of equity through ex parte presentation.

37.    On January 6, 2026, two days before the City filed its case, Keena approved his own appointment papers.

### D. Fraud on the Court and Denial of Access

38. On January 8, 2026, Odekirk filed an Ex Parte Application and represented to the state court that Christian and Dr. Lam were uncooperative. The representation was false. Odekirk had been served with Plaintiffs' formal written opposition and demand for hearing details more than 24 hours prior to filing.

39. Odekirk intentionally withheld the e-filing envelope number, the assigned department, and the hearing time from Plaintiffs to ensure they could not lodge opposition with the court clerk before the ex parte hearing.

40. Odekirk committed a fraud upon the court by mischaracterizing the Notice to Abate deadline as "January 2, 2026" in her sworn declaration, concealing the facial impossibility of the actual "January 2, 2025" date.

41. On January 9, 2026, Odekirk represented to Plaintiffs in writing that no docket number had been assigned, preventing them from filing timely opposition, despite her own declaration filed the prior day bearing docket number 26CV484023 and envelope number 22206116 on its face.

### E. Present Deprivations and Court Futility

42. On March 12, 2026, Keena caused a $125,000 Deed of Trust to be recorded against the Property without notice, without consent, and without an evidentiary hearing on necessity or amount.

43. On April 2, 2026, Vizcaino and Keena drilled the Property's locks and forced entry without consent and without a stay.

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 7

44. On April 14, 2026, Odekirk admitted to Dr. Lam that the Property had been vacant since November 2023, confirming that her January 8 representation of present narcotics activity was false.

45. At the April 15, 2026 case management conference, the state judicial officer refused to consider the pre-filing coordination documented in Invoice No. 13335.

46. The state court has refused to permit Plaintiffs' Request for Judicial Notice to appear on the public docket and has allowed an ex parte request for relief to sit for nearly one month without a hearing. The state forum is no longer neutral, and further state-level remedies are futile.

### F. Individual Defendants' Roles

47. Defendant Hatfield, as City Code Enforcement Officer, posted the initial regulatory signage on the Property. Hatfield subsequently submitted a sworn declaration in support of the Ex Parte Application that contained material misrepresentations. Hatfield represented to Plaintiffs that the City was deferring to the County on the matter, when in fact City and County personnel were coordinating the receivership filing.

48. Defendant Tracey, as City Code Enforcement manager, held supervisory authority over the City's enforcement actions against the Property. Tracey was on notice of the procedural defects identified by Plaintiffs, including the absence of statutory predicate and the impossible-deadline Notice. Tracey did not intervene to halt the proceedings. She permitted them to advance.

49. Defendant Underwood, as Director of the Santa Clara County Department of Environmental Health, was the final policymaker for DEH. Underwood signed the cleanup order against the Property. On May 7, 2024, Underwood represented in writing to Plaintiffs that the matter would be referred to the Santa Clara County Superior Court. No such referral was made by the County. Underwood instead permitted the matter to remain unresolved through the criminal proceedings and the period during which Plaintiffs filed tort claims.

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 8

50.    Defendant Wills, as Santa Clara County Counsel, holds final policymaking authority over the County's litigation strategy. Wills directed the pivot from County administrative enforcement to City-led receivership following Plaintiffs' filing of tort claims on October 15, 2025. Wills's direction of that pivot is a final policymaker decision binding the County under principles of municipal liability.

51.    Defendant Carr, as receiver's counsel, billed Plaintiffs' estate for work performed before the receiver had been judicially appointed. Carr's billing entries in Invoice No. 13335 reflect continuous communication with City and County personnel throughout the pre-filing coordination period.

## CLAIMS FOR RELIEF

*CLAIM 1: Conspiracy to Deprive Constitutional Rights (42 U.S.C. § 1983)*

52.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

53.    Defendants Odekirk, Keena, Carr, Wills, Hatfield, Nguyen, Underwood, Tracey, and Vizcaino reached a mutual agreement and meeting of the minds to deprive Plaintiffs of the Property by misusing California's methamphetamine contamination cleanup framework (Health and Safety Code §§ 25400.10 et seq.) and nuisance abatement receivership (Health and Safety Code § 17980.7) as paired vehicles for relief that neither statute, properly invoked, would have authorized.

54.    This conspiracy is evidenced by Invoice No. 13335, which documents 77 days of pre-filing coordination among municipal and private actors prior to any state court acquiring jurisdiction over the matter.

55. Defendants acted under color of state law to engineer a procedural emergency where none existed, for the purpose of shielding themselves from tort liability.

### CLAIM 2: Procedural Due Process (14th Amendment)

56. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

57. Defendants deprived Plaintiffs of their property interests without the mandatory Health and Safety Code § 25400.18 and § 25400.19 predicate required by state law to trigger regulatory authority.

58. Defendants further violated Due Process by utilizing an engineered ex parte filing that intentionally withheld the case number and hearing details from Plaintiffs, thereby denying them a meaningful opportunity to be heard.

59. The recording of a $125,000 Deed of Trust against the Property without an evidentiary hearing or judicial determination of necessity constitutes a final deprivation of property without due process of law.

### CLAIM 3: Substantive Due Process (14th Amendment)

60. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

61. The Fourteenth Amendment's Due Process Clause prohibits arbitrary government action that shocks the conscience.

62. Defendants' conduct, taken individually and as a whole, was arbitrary and conscience-shocking. Defendants excluded Plaintiffs from their home for 900 days under government action lacking statutory authority. Defendants engaged in 77 days of secret coordination to construct a state-court receivership predicated on a Notice to Abate bearing a deadline eleven months in the past. Defendants caused the receiver to approve his own appointment papers before the

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 10

appointing court acquired jurisdiction. Defendants procured ex parte orders through sworn declarations they knew to be false. The presiding state-court judge then ruled on his own disqualification in violation of California Code of Civil Procedure § 170.3(c)(5).

63.    Each act and the cumulative course of conduct violated Plaintiffs' substantive due process rights.

### CLAIM 4: First Amendment Retaliation

64.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

65.    Plaintiffs' filing of government tort claims on October 15, 2025, constitutes protected petitioning activity under the First Amendment.

66.    Defendants initiated the receivership coordination exactly nine days later, on October 24, 2025, establishing a causal temporal proximity between the protected activity and the adverse government action.

67.    The receivership was prosecuted not for legitimate abatement, but as a retaliatory response to Plaintiffs' exercise of their constitutional rights.

### CLAIM 5: Denial of Access to Courts

68.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

69.    The First and Fourteenth Amendments guarantee meaningful access to the courts.

70.    Defendant Odekirk withheld from Plaintiffs the docket number, envelope number, assigned department, and hearing time of the state-court ex parte application, despite Plaintiffs' express requests for that information and despite Odekirk's own filed declaration bearing the docket

number on its face. The withholding was deliberate and was for the purpose of preventing Plaintiffs from appearing and opposing the application.

71.    As a direct result, Plaintiffs were unable to lodge their opposition with the court clerk before the ex parte hearing, and the receivership was procured without Plaintiffs ever being heard. The state court has further refused to permit Plaintiffs' Request for Judicial Notice to appear on the public docket, perpetuating the access denial.

### CLAIM 6: Takings Without Just Compensation (5th Amendment)

72.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

73.    The Fifth Amendment, applied to the States through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation. A federal takings claim is cognizable in this Court without state-court exhaustion. *Knick v. Township of Scott*, 588 U.S. 180 (2019).

74.    Defendants have effected a taking of Plaintiffs' Property in two respects. First, Defendants have excluded Plaintiffs from continuous possession and use of the Property since November 9, 2023, a period of 900 days, under regulatory and judicial action lacking statutory predicate. Second, Defendants caused a $125,000 Deed of Trust to be recorded against the Property on March 12, 2026, without notice, without consent, and without evidentiary hearing, encumbering the Property and exposing it to non-judicial foreclosure.

75.    No just compensation has been offered or paid for either the continuing dispossession or the recorded encumbrance.

### CLAIM 7: Abuse of Process

76.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

77. Defendants used the state-court process for purposes the process was not designed to serve. The Notice and Order to Abate Nuisance was not issued to obtain compliance; it was issued as a paper predicate for an already-scheduled receivership filing, bearing a compliance deadline eleven months in the past. The Ex Parte Application was not filed to address an emergency; it was filed to deprive Plaintiffs of an opportunity to oppose, after Defendants had withheld the docket number, envelope number, and hearing details necessary for Plaintiffs to appear.

78. Defendants further used the receivership process to encumber the Property for private financing through a $125,000 Deed of Trust recorded without notice or hearing, and to impose receiver fees for work performed before any court acquired jurisdiction over the matter.

79. Defendants used the process as a pre-packaged mechanism to extinguish Plaintiffs' tort-claim liability through a manufactured state-court judgment.

### CLAIM 8: Unreasonable Search and Seizure (4th Amendment)

80. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

81. The Property and its contents are protected by the Fourth Amendment against unreasonable search and seizure. Plaintiffs hold a reasonable expectation of privacy in the Property and a continuing possessory interest therein.

82. In November 2023, Defendant Nguyen, acting on behalf of the County, entered the Property and conducted regulatory sampling. Any consent to that entry was the product of coercion. The County had posted signage on the Property warning of criminal liability and civil penalties for non-compliance with the cleanup order. Defendant Nguyen reinforced those threats in person to Dr. Lam. Both the signage and the cleanup order rested on regulatory authority the County did not possess, the predicate notification under Health and Safety Code §§ 25400.18 and 25400.19 having never been issued. Consent extracted under threat of penalties for non-compliance with an unauthorized order is invalid.

83.    On April 2, 2026, Defendants Vizcaino and Keena drilled the entry-door lockset and entered the Property without warrant, without consent, and without exigent circumstances. The asserted authority for that entry was the state-court Preliminary Injunction. That order, and the receivership it confirmed, rested on grounds Defendants had themselves constructed and knew to be defective, including the impossible-deadline Notice to Abate, the withheld docket information, and the 77 days of pre-filing coordination documented in Invoice No. 13335. Entry under known-defective process is itself unreasonable.

84.    Plaintiffs have been excluded from the Property by continuous government action since November 9, 2023, a period of 900 days. That ongoing exclusion constitutes a meaningful interference with Plaintiffs' possessory interest in the Property and is, as to each day of its continuation, a continuing seizure under the Fourth Amendment.

85.    Each of the foregoing entries and the continuing exclusion was unreasonable under the Fourth Amendment because it lacked any of the recognized justifications for warrantless governmental intrusion: valid consent, exigent circumstances, lawful regulatory authority, or a facially valid court order issued on truthful representations.

### CLAIM 9: Fraud on the Court

86.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

87.    Fraud on the court occurs when a party or officer of the court engages in an unconscionable plan or scheme designed to improperly influence the court in its decision. Defendants engaged in such a scheme.

88.    Defendants manufactured the predicate document for the receivership. The Notice and Order to Abate Nuisance was issued on December 15, 2025 with a compliance deadline eleven months in the past, on which the receivership filing was already scheduled. The Notice contained vague recitals in its first eight charges and a false statement in its ninth that Plaintiffs were currently

occupying the Property and contaminating neighboring properties. Plaintiffs had been excluded from the Property for 772 days at the time of issuance.

89.    Defendants caused the receiver to approve his own appointment papers on January 6, 2026, two days before any state court acquired jurisdiction.

90.    Defendant Odekirk's January 8, 2026 sworn declaration to the state court materially misrepresented Plaintiffs as uncooperative and unresponsive. The opposite was true. Plaintiffs had engaged Odekirk in writing for weeks and had served formal opposition more than 24 hours before the ex parte filing. Odekirk was herself the unresponsive party. The misrepresentation procured the ex parte presentation of an application that would not have proceeded ex parte on truthful representations.

91.    Odekirk's declaration further misstated the Notice to Abate's actual compliance deadline, concealing from the court that the Notice on its face was impossible to comply with.

92.    Defendant Odekirk withheld from Plaintiffs the docket number, envelope number, assigned department, and hearing time necessary for Plaintiffs to appear and oppose the ex parte application. On January 9, 2026, Odekirk represented to Plaintiffs in writing that no docket number had been assigned, while her own declaration filed the prior day bore docket number 26CV484023 and envelope number 22206116 on its face.

93.    The City of San Jose filed a receivership it lacked statutory authority to obtain, importing County methamphetamine-cleanup allegations into a court of equity through ex parte presentation while shielding both the City and the County from Plaintiffs' pending tort claims.

94.    The state-court judicial officer assigned to the matter, on April 9, 2026, ruled on his own disqualification by striking Plaintiffs' verified Statement of Disqualification in direct violation of California Code of Civil Procedure § 170.3(c)(5). The state court has further refused to permit

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 15

Plaintiffs' Request for Judicial Notice to appear on the public docket, preventing the documentary record of the foregoing conduct from reaching appellate review through ordinary channels.

95.    Each of the foregoing acts, taken individually and in combination, constitutes a scheme designed to improperly influence the state court's decisions, to procure orders from that court that would not have issued on truthful representations, and to insulate those orders from appellate scrutiny. The scheme has succeeded in producing every state-court order on which Defendants now act.

### CLAIM 10: *Municipal Liability* (Monell v. Department of Social Services)

96.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

97.    A municipality is liable under 42 U.S.C. § 1983 for constitutional violations caused by its official policies, customs, or final policymaker decisions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

98.    Defendant City of San Jose is liable for the constitutional violations alleged herein through the conduct of its officials acting with final policymaking authority, including but not limited to the City Attorney's Office decision to file the receivership in the absence of statutory predicate, the Code Enforcement decision to issue the Notice and Order to Abate Nuisance bearing the impossible-deadline, and the supervisory ratification of the foregoing by City management.

99.    Defendant County of Santa Clara is liable for the constitutional violations alleged herein through the conduct of its officials acting with final policymaking authority, including Defendant Wills's direction of the pivot from County administrative enforcement to City-led receivership following Plaintiffs' tort claims, Defendant Underwood's signing of the cleanup order and her direction of DEH's continuing administrative posture, and the County's custom and practice of asserting regulatory authority under Health and Safety Code Chapter 6.9.1 without confirming the statutory predicate required by §§ 25400.18 and 25400.19.

VERIFIED COMPLAINT (42 U.S.C. § 1983) - 16

100.    The City and County are each directly liable to Plaintiffs for the constitutional violations proximately caused by the foregoing policies, customs, and final policymaker decisions.

## **PRAYER FOR RELIEF**

Plaintiffs pray for:

(a)    Declaratory relief establishing the federal constitutional violations;

(b)    Temporary and preliminary injunctive relief as set forth in Plaintiffs' concurrently filed Ex Parte Application;

(c)    Permanent injunctive relief against further prosecution of the receivership on the current record, against further encumbrance, and against further entry;

(d)    Compensatory damages against all Defendants sued in their individual capacities, in an amount to be proven at trial;

(e)    Punitive damages against all Defendants sued in their individual capacities where authorized by law;

(f)    Restitution of the $125,000 Deed of Trust, all receiver fees paid or pledged, and all costs of Plaintiffs' replacement housing since November 9, 2023;

(g)    Costs of suit, including reasonable costs and attorneys' fees under 42 U.S.C. § 1988 if Plaintiffs retain counsel or prevail on statutory-fees claims;

(h)    Such other and further relief as the Court deems just and proper.

## VERIFICATION

I, Nicholas Christian, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on April 27, 2026, at San Jose, California.

*NChristian*

Nicholas Christian

Plaintiff, Pro Se

I, Cheryl Lam, Ph.D., declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on April 27, 2026, at San Jose, California.

*Cheryl Lam*

Cheryl Lam, Ph.D.

Plaintiff, Pro Se