Nicholas Christian, Plaintiff In Pro Se
72 N. Buena Vista Ave., San Jose, CA 95126
(408) 940-2424 | christian.nicholask@gmail.com

Cheryl Lam, Ph.D., Plaintiff In Pro Se
72 N. Buena Vista Ave., San Jose, CA 95126
(408) 421-7162 | cheryl16@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| NICHOLAS CHRISTIAN, an individual; and CHERYL LAM, Ph.D., an individual,<br>Plaintiffs,<br>v.<br><br>CITY OF SAN JOSE, a California municipal corporation; COUNTY OF SANTA CLARA, a California public entity; et al.,<br>Defendants. | Case No. 5:26-cv-03708-EJD<br>Date: October 15, 2026<br>Time: 9:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>**PLAINTIFFS' OPPOSITION TO CITY OF SAN JOSE DEFENDANTS' MOTION TO DISMISS (DKT. NO. 19); OBJECTIONS TO THE KREGER DECLARATION AND REQUEST FOR JUDICIAL NOTICE** |

## INTRODUCTION

1. The City Defendants' motion does not dispute a single fact pleaded in the Complaint. It could not: on a Rule 12(b)(6) motion, every well-pleaded allegation is taken as true. Instead, the motion asks this Court to dismiss without ever engaging the Complaint's central theory: that the entire enforcement chain, from the County's 2023 cleanup order through the receivership, was commenced without the statutory law-enforcement-notification predicate that Health and Safety Code sections 25400.18 and 25400.19 require, and was therefore ultra vires. Compl. ¶¶ 25-27, 35, 57, 82, 93, 98-99. The words "25400," "predicate," and "ultra vires" do not appear anywhere in the

motion's 22 pages. A motion that never addresses the gravamen of the pleading it attacks cannot carry the movant's burden.

2. What the motion offers instead is a set of doctrines whose common feature is that none of them contests the truth of the allegations: a Rule 8 attack on an 18-page complaint; a Younger argument built on an order that expressly decided nothing on the merits; the receiver's Barton doctrine, invoked by lawyers who do not represent the receiver; and immunities asserted at their maximum breadth against conduct that sits squarely in each immunity's recognized exceptions. The motion also repeatedly mischaracterizes the Complaint, most notably converting a pleaded allegation that Deputy City Attorney Odekirk withheld the case number in writing while her own filed declaration bore it on its face (Compl. ¶¶ 39-41) into an assertion that Plaintiffs "could not find the docket number." Mot. 10.

3. The motion's factual foundation fares no better than its law: it rests on five exhibits and a sixth that was never filed, and the sworn descriptions of the exhibits repeatedly fail comparison with the exhibits themselves. Section III sets out the objections. Finally, the motion never addresses the Eighth Claim (Fourth Amendment search and seizure) at all, argues the Fourth Claim (First Amendment retaliation) exclusively with Free Exercise Clause religion cases, and attacks a "single paragraph" Monell claim that in fact spans five paragraphs and pleads a final-policymaker theory the motion never briefs. The motion should be denied. In the alternative, any claim the Court finds deficient should be dismissed with leave to amend.

## LEGAL STANDARD

4. On a Rule 12(b)(6) motion the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to Plaintiffs. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim survives if it pleads "factual content that allows the court to draw the reasonable

inference that the defendant is liable." Id. Pro se pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

5. The motion leans heavily on the Kreger Declaration's exhibits (state-court filings and orders) for the truth of what they recite. E.g., Mot. 9 (property "was found to be a danger to the community following evidence of drug manufacturing"); Mot. 16 ("a fact shown false by the superior court filings and orders"). That is improper. A court "cannot take judicial notice of disputed facts contained in such public records," and the Ninth Circuit has warned against "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint" at the pleading stage. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998-99 (9th Cir. 2018). The Court may notice that the state filings exist; it may not accept their contested contents as true against the Complaint's contrary allegations.

## OBJECTIONS TO THE KREGER DECLARATION AND REQUEST FOR JUDICIAL NOTICE

*Contained in this brief pursuant to Civil L.R. 7-3(a).*

6. **Exhibit 6 does not exist.** The motion cites "Kreger Decl. Exs. 1, 3, 4, 6" at 9:17 and "Kreger Decl. Ex 2, 6" at 11:9-10. The Kreger Declaration authenticates Exhibits 1 through 5. Kreger Decl. ¶¶ 2-6. The Request for Judicial Notice lists Exhibits 1 through 5. Dkt. 19-2 at 2. Both 73-page attachments contain separator pages for Exhibits 1 through 5 only. The citations offered for the assertion that the Superior Court resolved the receiver's authority in the City's favor are Exhibit 2, which is Plaintiffs' own rebuttal filing, and Exhibit 6. Mot. 11:8-10. No order supports that assertion in this Court.

7. **Kreger Exhibit 5 is not the document it is sworn to be.** Kreger Declaration ¶ 6 and RJN ¶ 5 identify Exhibit 5 as "Superior Court Judge Parrett's Order denying plaintiff's motion to stay his Preliminary Injunction Order." The document at Dkt. 19-1 at 72 is an order of the California Court of Appeal, Sixth Appellate District, No. H054015, electronically filed March 27, 2026, denying a petition for writ of supersedeas and an application for immediate temporary stay, with Justices Danner, Lie, and Wilson participating. Two sworn filings describe an appellate order as an order of the trial court. The order itself decided nothing on the merits: it denied interim stay relief in an appeal taken from the temporary restraining order, and that TRO was superseded by the preliminary injunction following the February 24, 2026 hearing. No court, trial or appellate, has adjudicated the merits of Plaintiffs' challenges to the receivership.

8. **The dates sworn for Kreger Exhibits 3 and 4 do not match the exhibits.** Kreger Declaration ¶¶ 4-5 and RJN ¶¶ 3-4 identify them as Judge Parrett's orders granting a temporary restraining order and a preliminary injunction. Exhibit 3 is stamped Filed January 13, 2026, against the motion's statement that the order was granted January 12, 2026. Mot. 8:7. Exhibit 4 recites a hearing held February 24, 2026, against the motion's statement of February 25, 2026. Mot. 8:8-9; Dkt. 19-1 at 54-55.

9. **The notice of entry inside Kreger Exhibit 4 precedes the entry it certifies.** The Judicial Council form CIV-130 at Dkt. 19-1 at 51 is signed by Deputy City Attorney Odekirk, dated March 10, 2026, electronically filed March 10, 2026 at 11:23 a.m., and states at item 1 that the order "was entered in this action on (date): March 25, 2026." Three dates now attach to one order across the moving papers: February 25 in the brief, February 24 in the order's own recital, and March 25 in the sworn notice of entry.

10. **Kreger Exhibit 1 carries no filing indicia.** Kreger Declaration ¶ 2 and RJN ¶ 1 swear Exhibit 1 is a true and correct copy of the complaint "filed on January 8, 2026." The copy bears a blank "Case Number" field in the caption, a blank "Case No." field in the footer, no clerk stamp, and no envelope number. Dkt. 19-1 at 4. Kreger Exhibits 3 and 4 carry filing stamps and

envelope numbers 22425077 and 22932769. The Complaint alleges that the envelope number and case number were withheld from Plaintiffs while Defendants' own papers bore them. Compl. ¶¶ 39-41, 92. The City has now authenticated in this Court a copy stripped of both.

11. **Kreger Exhibit 2 is not the document it is sworn to be.** Kreger Declaration ¶ 3 and RJN ¶ 2 identify Exhibit 2 as "Plaintiffs' opposition to the City's complaint." The document at Dkt. 19-1 at 20 is "Defendants' Core Rebuttal to Ex Parte Application; Declaration of Nicholas Christian," noticed for January 13, 2026.

12. **The RJN's stated basis is not a rule of judicial notice.** The Request cites "Fed. R. Evid. 803(8), 201." Rule 803(8) is a hearsay exception; it authorizes no judicial notice. And a request under Rule 201 must identify the facts to be noticed, not merely the documents: a court "must also consider, and identify, which fact or facts it is noticing," because a document's eligibility for notice "does not mean that every assertion of fact within that document is judicially noticeable for its truth." Khoja, 899 F.3d at 999. The Request identifies five documents and no facts.

13. **Requested ruling.** Plaintiffs do not oppose notice of the existence of Kreger Exhibits 1 through 5 as filings. Plaintiffs ask the Court to (a) decline notice of the truth of any fact recited within them, Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); (b) disregard the descriptions of Exhibits 1 through 5 in the Kreger Declaration and the Request, which the exhibits contradict on their faces; and (c) disregard every assertion in the motion supported only by Exhibit 6. Where a party authenticates a document that is not the document described, reliance on it is error, and "[i]t is the parties' duty to ensure their own accuracy." Khoja, 899 F.3d at 1000.

## THE MOTION NEVER ADDRESSES THE COMPLAINT'S CENTRAL THEORY

14. The Complaint's gravamen is statutory: sections 25400.18 and 25400.19 condition the local health officer's authority under the Methamphetamine or Fentanyl Contaminated Property Cleanup Act on prior "notification from a law enforcement agency." Compl. ¶ 25. The Complaint alleges no such notification was ever produced and, on information and belief, none was ever issued, rendering every downstream act ultra vires: the cleanup order, the warning posting, the Notice to Abate, and the receivership itself. Compl. ¶¶ 26-27. That theory runs through the conspiracy claim (¶ 53), procedural due process (¶ 57), the Fourth Amendment claim (¶ 82), fraud on the court (¶ 93), and both Monell claims (¶¶ 98-99).

15. On this motion those allegations are presumed true. And Defendants' own supporting papers confirm rather than rebut them: the declaration of DEH Specialist Jean Nguyen, filed by the City with its state ex parte application, swears that on November 9, 2023 he "was informed by Inspector Joseph Hatfield from the City of San Jose Code Enforcement Division" of the alleged laboratory. Christian Decl. Ex. 3 (Nguyen Decl.) ¶ 3. A city code-enforcement referral is not "notification from a law enforcement agency." Indeed, this Court has already flagged the issue as open, expressly reserving "whether the 'law-enforcement trigger,' which Plaintiffs allege never took place, in fact occurred for purposes of considering the State's interest." Dkt. 10 at 4 n.1. The motion's silence on this theory is dispositive of its own request: a defendant cannot obtain dismissal of claims whose central premise it never addresses. (Plaintiffs submit the Christian Declaration exhibits for two purposes only: the Younger inquiry, on which a court may consider material outside the pleadings, and to answer the materials Defendants themselves placed before the Court through the Kreger Declaration and Request for Judicial Notice. Plaintiffs do not offer them to supplement the Complaint and do not seek conversion under Rule 12(d); the Rule 12(b)(6) analysis rests on the Complaint alone.)

16. The motion is equally silent on the Eighth Claim. Its argument headings march through the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Claims, see Mot. 2 (table of contents), and skip the Eighth (Fourth Amendment search and seizure, Compl. ¶¶ 80-85) entirely. There is no basis to dismiss a claim the motion does not discuss.

17. The motion also seeks relief it cannot obtain for parties it does not represent. Three defendants move: the City, Ms. Odekirk, and Mr. Hatfield. Mot. 1. The Notice asks the Court to dismiss the entire action against all eleven defendants, eight of whom have not moved and three of whom have not appeared. A court may not dismiss claims against a non-moving defendant absent notice, an opportunity to respond, and a determination that the plaintiff "cannot possibly win relief." Lee, 250 F.3d at 683 n.7; Wong v. Bell, 642 F.2d 359, 362 (9th Cir. 1981).

## THE COMPLAINT COMPLIES WITH RULE 8

18. Defendants say the Complaint is "unintelligible," "prolix," and makes it "impossible to figure out which defendants are allegedly liable for which wrongs." Mot. 9-10, citing McHenry v. Renne, 84 F.3d 1172 (9th Cir. 1996), and Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088 (E.D. Cal. 2014), a case dismissing an 86-page complaint filed by counsel. This Complaint is 18 pages. It pleads one hundred numbered paragraphs organized into six lettered factual sections, including one titled "Individual Defendants' Roles" that devotes a separate paragraph to each individual defendant. Compl. ¶¶ 47-51. The pleading identifies the actor for each act: ¶ 53 names the nine alleged conspirators; ¶¶ 82-83 name Nguyen for the 2023 entry and Vizcaino and Keena for the April 2, 2026 forced entry; ¶¶ 90-92 name Odekirk, with dates and document numbers.

19. The motion's own structure defeats its Rule 8 argument. After asserting that "[i]t is not clear from the complaint which causes of action apply to the City Defendants," Mot. 8, the motion identifies each of the ten claims by name and number, Mot. 8-9, and then briefs them claim by claim. A pleading that a defendant can read, sort, and answer claim by claim has, by definition, given the notice Rule 8 requires. The motion's remaining rhetoric about the Complaint's authorship, Mot. 10, is not a Rule 8 argument. The Complaint is a verified pleading, signed by both Plaintiffs under penalty of perjury.

**YOUNGER DOES NOT SUPPORT DISMISSAL**

20. The motion's Younger argument rests almost entirely on this Court's April 30, 2026 order denying a temporary restraining order. Mot. 10, 15, 17. But that order decided far less than the motion claims. The Court expressly qualified its state-interest finding: "at this stage, and without the benefit of the City or the County's position on the TRO," Dkt. 10 at 4, and rejected the bad-faith exception not on the law but because Plaintiffs had "assert[ed] in a conclusory manner" facts not then before the Court. Dkt. 10 at 4-5. The Court likewise denied relief in part because the motion "referenc[ed] reports, or invoices or documents which were filed in the Superior Court Action, but which Plaintiffs do not attach as exhibits." Dkt. 10 at 6. It never reached the remaining Winter elements. Id. (citing Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).

21. The pleaded facts, now also attached as exhibits, supply precisely the showing the Court found missing. Younger abstention presupposes a genuine state enforcement proceeding; it does not extend to prosecutions brought in bad faith or for harassment. Younger v. Harris, 401 U.S. 37, 49, 53-54 (1971). As this Court stated the standard, a "plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Dkt. 10 at 4 (citation omitted). The Complaint pleads, and the receiver's own sworn billing corroborates, that:

22. (a) Plaintiffs presented government tort claims on October 15, 2025; nine days later, on October 24, the receiver's invoice opens with a "[p]hone call with H. Odekirk from the City re her preparing to file a TRO to assign a Receiver over the property." Christian Decl. Ex. 1 (Invoice No. 13335) at 1; Compl. ¶¶ 29-30.

23. (b) On December 9, 2025, six days before the Notice to Abate existed, the invoice records Odekirk correspondence "re getting all the declarations back, posting and mailing notice on 12/15/25, and filing the complaint and ex parte application on 1/5/26." Christian Decl. Ex. 1 at

1; Compl. ¶¶ 32-34. The "compliance opportunity" was scheduled to fail before it was issued, and the notice itself bore a compliance deadline of "January 2, 2025," a date eleven months in the past. Compl. ¶ 33; Christian Decl. Ex. 2 (Odekirk Decl.), Ex. A thereto.

24. (c) Two of the "emergency" declarations supporting the ex parte application were executed in November 2025 (Joanne Tracey's on November 4, 2025; Jean Nguyen's on November 20, 2025), months before the January 8, 2026 filing they supported. Christian Decl. Exs. 3-4.

25. (d) On January 6, 2026, the nominated receiver approved his own appointment papers, Christian Decl. Ex. 1 at 1; Compl. ¶ 37; and on January 9, 2026, while the receiver's team was reviewing conformed, case-numbered copies, Christian Decl. Ex. 1 at 2, Odekirk wrote Plaintiffs: "We have not received the stamped versions back from the Court, nor have we received a docket number or hearing date from the Court." Christian Decl. Ex. 5. Her own declaration, e-filed the previous afternoon, bears "Case #26CV484023, Envelope: 22206116" on its face. Christian Decl. Ex. 2 at 1.

26. These are dated, documentary allegations of "retaliatory, harassing, or other illegitimate motive," Dkt. 10 at 4-5: the very showing whose absence drove the prior ruling. A proceeding engineered on a pre-set filing schedule, supported by pre-executed declarations, triggered by an impossible-deadline notice, and prosecuted while concealing the case number from the parties enjoined is not the good-faith enforcement proceeding Younger protects. At minimum, whether the bad-faith exception applies is a fact-bound question that cannot be resolved against Plaintiffs on the pleadings.

27. Even if Younger applied in full, it would not support the relief requested. The Ninth Circuit, en banc, holds that "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004) (en banc). The Complaint seeks damages against every defendant. Compl., Prayer ¶¶ (d)-(f). Defendants' own conclusion concedes the point, asking for

dismissal "or at least stay[]." Mot. 21. Younger therefore cannot produce a dismissal of this action, and a stay would be independently inequitable: every month of delay accrues receivership fees and interest against Plaintiffs' estate under instruments already recorded on their title.

**BARTON IS NOT THE CITY DEFENDANTS' DOCTRINE**

28. The motion argues "the action" must be dismissed because Plaintiffs did not obtain leave of the state court before suing the receiver. Mot. 8, citing Barton v. Barbour, 104 U.S. 126 (1881). The City Defendants do not represent the receiver. Whatever Barton's application to the claims against Mr. Keena (an issue for his own counsel, and one bounded by the doctrine's recognized limits for ultra vires and pre-appointment conduct, and by 28 U.S.C. § 959(a) for acts in carrying on business connected with the property), it provides no basis whatsoever to dismiss claims against the City of San Jose, Ms. Odekirk, or Mr. Hatfield. A doctrine protecting court-appointed receivers from unauthorized suit does not extend to the municipality that procured the receivership.

**THE ASSERTED IMMUNITIES DO NOT REACH THE PLEADED CONDUCT**

**THE CITY HAS NO IMMUNITY AT ALL**

29. The motion asks that "[a]ny federal claims against the City… be dismissed," Mot. 18, in a section headed by immunity arguments. But municipalities have no immunity under section 1983, qualified or otherwise. "[T]here is no tradition of immunity for municipal corporations," and "the municipality may not assert the good faith of its officers or agents as a defense to liability."

Owen v. City of Independence, 445 U.S. 622, 638 (1980). The Monell claims rise or fall on their pleading sufficiency alone, addressed in Section IX.H below.

## ABSOLUTE PROSECUTORIAL IMMUNITY DOES NOT COVER ODEKIRK'S SWORN TESTIMONY OR ADMINISTRATIVE ACTS

30. The motion sweeps all of Ms. Odekirk's alleged conduct, including "allegedly ma[king] false statements in her declaration," Mot. 19, into absolute prosecutorial immunity. Controlling authority the motion never cites holds otherwise. In Kalina v. Fletcher, 522 U.S. 118 (1997), a unanimous Supreme Court held that a government attorney who "personally attest[s] to the truth of the averments" in a sworn filing performs "the function of the witness, not of the lawyer," and receives only qualified immunity for that act. Id. at 129-31 ("Testifying about facts is the function of the witness, not of the lawyer.").

31. Kalina fits this case exactly, down to the fact on which it turned: no law required the attorney to be the declarant. In the state filing package, percipient witnesses Hatfield, Tracey, and Nguyen each filed their own declarations. Ms. Odekirk nonetheless filed her own sworn factual narrative, expressly framing herself as a witness: "If called to testify as to any of the facts below, I could competently testify as to all identified facts below." Christian Decl. Ex. 2 ¶ 1. Her declaration's factual sequence (notice, then non-compliance, then "I filed this matter," Ex. 2 ¶ 3) is the sworn account the Complaint alleges to be false, and the receiver's billing contradicts: the filing date was set on December 9, before the notice issued. Christian Decl. Ex. 1 at 1; Compl. ¶¶ 38, 90-91.

32. Plaintiffs do not dispute that Ms. Odekirk's decisions to file, her drafting, and her selection of materials are advocacy functions within Imbler and Buckley. The claims against her rest on the conduct those cases exclude. First, her sworn attestation. Kalina, 522 U.S. at 129-31.

Second, administrative acts: the written January 9 denial that any case number existed, the withholding of the hearing date and department, and the "Case No. TBD" service arrangement. Third, conduct preceding any filing and directed at the Property's title rather than at any abatement: on November 3 and November 12, 2025, before the Notice to Abate existed, the receiver's invoice records the City ordering a Litigation Guarantee, a title product used to identify parties for foreclosure, and correspondence regarding suit against the lienholder. Christian Decl. Ex. 1 at 1. Buckley v. Fitzsimmons, 509 U.S. 259, 273-76 (1993), places acts of this kind on the investigative and administrative side of the functional line, and the burden of establishing that a challenged act was an advocacy function rests on the official claiming the immunity. Id. at 269.

**<u>QUALIFIED IMMUNITY FAILS AT THE PLEADING STAGE ON THE JUDICIAL-DECEPTION ALLEGATIONS</u>**

33. The motion's qualified-immunity argument never identifies the right at issue. The Complaint does: deliberately false statements made to a court to procure process. In this Circuit, "if an officer submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth… he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost." Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir. 2002) (citation omitted); accord Chism v. Washington State, 661 F.3d 380 (9th Cir. 2011) (deliberate falsehood or reckless disregard, plus materiality).

34. The Complaint pleads the falsity with specificity and coordinates: the sworn characterization of Plaintiffs as "uncooperative" filed the day after Plaintiffs served written opposition, Compl. ¶¶ 38, 90; the sworn restatement of the Notice's impossible deadline as "January 2, 2026," concealing the facial defect, ¶ 91 and Christian Decl. Ex. 2 ¶ 4; and the January 9 written denial of an assigned case number contradicted by her own filed declaration, ¶¶ 41, 92 and Christian Decl. Ex. 5. Materiality is statutory: under Health and Safety Code section 11573(a) the state court "shall

allow" a temporary restraining order upon the verified showing, so the false showing and the order stand in direct causal line. Under Butler and Chism these allegations defeat qualified immunity at the pleading stage; their truth is for discovery and trial.

35. As to Mr. Hatfield, the same framework applies to his sworn declaration that he "confirmed drug manufacturing" during the November 9, 2023 inspection, Christian Decl. Ex. 7 (Hatfield Decl.) ¶ 7, an attestation the San Jose Fire Department's own hazmat report for that incident contradicts ("did not notice any active lab processes," Incident No. 23-3139060), and that no criminal charge ever supported. Compl. ¶¶ 22-23, 47.

**EACH CHALLENGED CLAIM IS ADEQUATELY PLEADED**

**CONSPIRACY (CLAIM 1)**

36. The motion asserts "[t]he entirety of Plaintiffs' conspiracy claim relies on the ipso facto conclusion that, because the various defendants sought judicial relief, they must have conspired." Mot. 13. That is not a description of this Complaint. The Complaint pleads an agreement evidenced by dated overt acts drawn from the receiver's own sworn invoice: the October 24 call nine days after the tort claims (¶ 30); the City's delivery of the receiver's declaration and proposed order "when the City is ready to file" (November 3, Christian Decl. Ex. 1 at 1); the December 9 scheduling of notice and filing together (¶¶ 32-34); the receiver's January 6 approval of his own appointment papers (¶ 37); and receiver's counsel billing the estate for work before any appointment existed (¶ 51). Which defendant did what, and when, is pleaded to the day. Under Iqbal these allegations state a plausible agreement; a "meeting of the minds" is rarely pleadable with more precision than the participants' own contemporaneous billing records.

**DUE PROCESS (CLAIMS 2 AND 3)**

37. The motion recites notice doctrine at length, Mot. 14-15, including United States v. James Daniel Good Real Property, 510 U.S. 43 (1993), which held that absent exigent circumstances the government must afford notice and a meaningful opportunity to be heard before seizing real property. That authority states Plaintiffs' claim. The Complaint does not allege "no notice"; it alleges engineered notice-without-ability-to-be-heard: an ex parte application whose filed notice block left the date, time, and department blank; a case number withheld in writing while the receiver's team held conformed copies; and an order signed before Plaintiffs could lodge their prepared opposition. Compl. ¶¶ 38-41, 58, 70-71; Christian Decl. Exs. 5-6. Whether that process was constitutionally "meaningful" cannot be resolved against Plaintiffs on the pleadings, and the state receivership statute itself preserves the question, providing that it shall not be construed to deprive "an owner of a substandard building of all procedural due process rights guaranteed by the California Constitution and the United States Constitution, including… receipt of notice of the violation claimed and an adequate and reasonable period of time to comply." Cal. Health & Safety Code § 17980.7(c)(14).

38. The motion's assertion that "Plaintiffs do not allege in the complaint the nature of their property interest," Mot. 16, overlooks ¶¶ 9-10: Dr. Lam is the record title holder, and Mr. Christian pleads proprietary and possessory interests. The motion's singular-"Plaintiff" framing (it elsewhere refers to "[h]is allegations," Mot. 18, and a settlement allegation from an apparent different case's "FAC," Mot. 19) simply erases the title-holding plaintiff whose interests it says were never pleaded.

**FIRST AMENDMENT RETALIATION (CLAIM 4)**

39. The motion's retaliation section cites United States v. Lee, Employment Division v. Smith, and Christian Legal Society v. Martinez, all Free Exercise Clause cases. Mot. 16. The Fourth Claim is a Petition Clause claim: Plaintiffs' October 15, 2025 government claims were protected petitioning, and the receivership work began nine days later. Compl. ¶¶ 65-66. The Complaint pleads causation beyond timing: the collapse of any live enforcement posture before the claims (¶¶ 28, 31), the pivot directed after them (¶ 50), and the object of extinguishing tort liability (¶¶ 55, 79). The motion cites no retaliation authority and engages none of these allegations; it provides no ground for dismissal.

**ACCESS TO COURTS (CLAIM 5)**

40. The motion declares the access-to-courts claim a "non-existent legal theor[y]." Mot. 17. The Supreme Court recognizes backward-looking access claims where official conduct caused "the loss of an opportunity to seek some particular order of relief." Christopher v. Harbury, 536 U.S. 403, 414 (2002). The underlying lost opportunity is identified: Plaintiffs' prepared opposition to the ex parte receivership application, which the withheld case number made impossible to lodge before the order issued, ¶¶ 70-71. The lost remedy is one no future proceeding can restore: pre-deprivation opposition to an appointment that has since generated recorded liens and accrued fees against Plaintiffs' estate. To the extent the Court concludes Harbury's elements require further specification, that is a basis for leave to amend, not dismissal with prejudice.

**TAKINGS (CLAIM 6)**

41. The motion's takings argument rests on the premise that the exclusion and encumbrance were valid nuisance abatement. Mot. 16-17. That premise is the disputed merits question:

the Complaint alleges the underlying findings were procured on a manufactured record without statutory authority, ¶¶ 25-27, 31-36, 74, and on this motion those allegations control. Knick v. Township of Scott, 588 U.S. 180 (2019), confirms the claim is properly here without state exhaustion. Compl. ¶ 73. A defense that depends on the truth of contested judicially-noticed findings cannot support Rule 12(b)(6) dismissal. Khoja, 899 F.3d at 998-99.

**ABUSE OF PROCESS (CLAIM 7)**

42. The motion's answer to the abuse-of-process claim is that "the Superior Court ruled otherwise." Mot. 17. Preclusion is an affirmative defense the motion never pleads or briefs, and no state ruling adjudicated whether the Notice to Abate was issued as a pretextual trigger document on a pre-set filing schedule, the conduct ¶¶ 77-79 allege.

**FRAUD ON THE COURT (CLAIM 9)**

43. The motion's only argument against Claim 9 is the same "non-existent legal theor[y]" label, unaccompanied by authority. Mot. 17. The Complaint pleads the scheme with dates and documents: the manufactured predicate notice (¶ 88), the receiver's approval of his own appointment papers before any court had jurisdiction (¶ 89), the sworn misrepresentations in the January 8 declaration (¶¶ 90-91), and the written denial of an assigned case number contradicted by the declarant's own filed papers (¶ 92). Whether that conduct is best remedied through Claim 9 standing alone or through Claims 2 and 7, which rest on the same facts, is a question of remedy and housekeeping, not a ground for dismissing the allegations. At most, any overlap warrants consolidation, not dismissal.

**MONELL (CLAIM 10)**

44. The motion attacks a "single paragraph" pleading "no factual allegations whatsoever of any City of San Jose policy or practice." Mot. 11:13-14. Claim 10 spans five paragraphs, ¶¶ 96-100, and ¶ 98 pleads three specific decisions: the City Attorney's Office decision to file the receivership without statutory predicate; Code Enforcement's issuance of the impossible-deadline Notice; and supervisory ratification of both. The motion briefs only a widespread-custom theory under Gillette and Trevino, but its own authority holds that a municipality is liable where "the individual who committed the constitutional tort was an official with 'final policy-making authority'" such that "the challenged action itself thus constituted an act of official governmental policy." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (citing Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)). The Complaint pleads that theory expressly, for both the City and the County. ¶¶ 98-99. The motion's only response to the ratification and final-policymaker allegations is a single sentence calling them conclusory, Mot. 18:14-15, without engaging Pembaur; that is not a basis for dismissal.

**THE MOTION'S DESCRIPTION OF THE RECORD**

45. The motion asks this Court to accept its characterization of a record the Court has not seen. Two tables set that characterization against the documents.

**Table 1. The motion's assertions and its own exhibits.**

(a) The Superior Court "already addressed" the receiver's authority in the City's favor. Mot. 11. Against it: The exhibits cited are Exhibit 2, Plaintiffs' own rebuttal, and Exhibit 6. No Exhibit 6 was filed.

(b) TRO "granted" January 12, 2026. Mot. 8. Against it: Kreger Ex. 3 is stamped filed January 13, 2026.

(c) Preliminary injunction "granted" February 25, 2026. Mot. 8. Against it: Kreger Ex. 4 recites a February 24 hearing and encloses a notice of entry stating entry on March 25, 2026.

(d) Kreger Ex. 5 is Judge Parrett's order denying a stay. Kreger Decl. ¶ 6. Against it: It is a March 27, 2026 order of the Sixth District Court of Appeal in H054015, denying interim stay relief in an appeal from the since-superseded TRO. No merits were adjudicated.

(e) Kreger Ex. 2 is Plaintiffs' opposition to the City's complaint. Kreger Decl. ¶ 3. Against it: It is Defendants' Core Rebuttal to Ex Parte Application with the Declaration of Nicholas Christian.

(f) Kreger Ex. 1 is the complaint filed January 8, 2026. Kreger Decl. ¶ 2. Against it: It bears no case number, no clerk stamp, and no envelope number.

(g) Judicial notice is authorized by Fed. R. Evid. 803(8). Dkt. 19-2. Against it: Rule 803(8) is a hearsay exception.

(h) It is "impossible to figure out which defendants are allegedly liable for which wrongs." Mot. 9-10. Against it: The motion names all ten claims and briefs nine of them by number, with paragraph citations. Mot. 8-19.

(i) Plaintiffs "could not find the docket number." Mot. 10. Against it: The Complaint alleges Ms. Odekirk stated in writing on January 9, 2026 that none had been assigned, while her declaration filed the previous day bore case number 26CV484023 and envelope number 22206116. Compl. ¶¶ 41, 92.

(j) The Monell claim is a “single paragraph” with “no factual allegations whatsoever.” Mot. 11. Against it: Claim 10 spans five paragraphs and pleads three final-policymaker decisions. Compl. ¶¶ 96-100.

(k) Plaintiffs “do not allege the nature of their property interest.” Mot. 16. Against it: Compl. ¶¶ 9-10 plead Dr. Lam’s record title and Mr. Christian’s proprietary and possessory interests, and the City’s own Kreger Ex. 1 pleads Plaintiffs’ “ownership, maintenance, and use” of the Property at its first paragraph.

(l) Immunity covers the decision “to discuss the matter with Plaintiff, as alleged in the FAC.” Mot. 19. Against it: No amended complaint exists in this action.

(m) The Fifth and Ninth Claims are “non-existent legal theor[ies].” Mot. 17. Against it: Christopher v. Harbury, 536 U.S. 403, 414 (2002), recognizes the access claim. No authority is cited for either assertion.

(n) The retaliation claim fails. Mot. 16. Against it: The section cites three Free Exercise Clause cases, addresses no element of retaliation, and itself supplies the causation chronology: the receivership complaint followed the tort claims by nine days. Mot. 16:2-4.

46. **Table 2. The sworn statements on which the state orders rest, and the documents that answer them.** These are the allegations of the Complaint, corroborated by Defendants’ own filings. Plaintiffs do not ask the Court to resolve them on this motion. They are set out because the Younger bad-faith exception and the judicial-deception standard turn on them.

(a) Plaintiffs were “uncooperative” and unresponsive. Odekirk Decl., Jan. 8, 2026. Against it: Plaintiffs had served written opposition and a demand for hearing details more than 24 hours earlier. Compl. ¶¶ 38, 90.

(b) The Notice to Abate carried a compliance deadline of "January 2, 2026." Odekirk Decl. ¶ 4. Against it: The Notice on its face reads "January 2, 2025," a date before the Notice was signed. Compl. ¶¶ 33, 91; Christian Decl. Ex. 2, Ex. A thereto.

(c) No docket number had been assigned. Odekirk, in writing, Jan. 9, 2026. Against it: Her declaration filed the previous afternoon bears case number 26CV484023 and envelope number 22206116. Compl. ¶¶ 41, 92; Christian Decl. Exs. 2, 5.

(d) Hatfield "conducted an inspection of the Property and confirmed drug manufacturing." Hatfield Decl. ¶ 7. Against it: The San Jose Fire Department hazmat report for the incident, No. 23-3139060, records no active lab processes, and no manufacturing charge was ever filed. Compl. ¶¶ 22-24, 47; Christian Decl. Ex. 7.

(e) DEH acted on notification of a laboratory. Nguyen Decl. ¶ 3. Against it: The notification came from "Inspector Joseph Hatfield from the City of San Jose Code Enforcement Division." Code enforcement is not a law enforcement agency, and sections 25400.18 and 25400.19 require notification from one. Compl. ¶¶ 25-27; Christian Decl. Ex. 3.

(f) Plaintiffs were "currently occupying the Property and contaminating neighboring properties." Notice to Abate, Charge 9. Against it: Plaintiffs had been excluded from the Property by government action since November 9, 2023, and on April 14, 2026 Ms. Odekirk acknowledged to Dr. Lam that the Property had been vacant since November 2023. Compl. ¶¶ 32, 44.

(g) The ex parte application addressed an emergency. Against it: On December 9, 2025, six days before the Notice issued, the invoice records the filing date already set. Christian Decl. Ex. 1 at 1; Compl. ¶¶ 32-34.

(h) The supporting declarations attested to current conditions. Against it: Tracey's declaration was executed November 4, 2025 and Nguyen's November 20, 2025, before the Notice they support existed. Christian Decl. Exs. 3-4.

(i) The receiver was the court's neutral officer. Against it: On January 6, 2026, two days before the City filed, the nominated receiver approved his own appointment papers. Christian Decl. Ex. 1 at 1; Compl. ¶ 37.

(j) Receivership fees are chargeable to the estate. Against it: Receiver's counsel billed the estate for work performed before any appointment existed. Compl. ¶ 51.

47. Every entry in the right column is a document Defendants filed, a document they authenticated in this Court, or an allegation this motion must accept as true. A motion that misdescribes the pleading it attacks, cites an exhibit that does not exist, and rests on orders procured on the showing described above does not carry the movant's burden on any of its grounds.

## IN THE ALTERNATIVE, LEAVE TO AMEND

48. If the Court finds any claim insufficiently pleaded, Plaintiffs request leave to amend. Dismissal without leave is proper only where amendment would be futile, and pro se litigants in particular must receive an opportunity to cure. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). The documentary record described above, most of it Defendants' own filed and sworn papers, forecloses any suggestion of futility.

## CONCLUSION

49. The motion never engages the Complaint's central statutory theory, never disputes a pleaded fact, misdescribes the pleading it attacks, cites a nonexistent exhibit for its dispositive assertion, and asks for immunity and abstention beyond what those doctrines allow. It should be denied in its entirety, and the objections in Section III should be sustained. In the alternative, Plaintiffs request leave to amend any claim found deficient, and, should the Court conclude Younger applies to any claim, a stay rather than dismissal of the damages claims, per Gilbertson.

Dated: August 24, 2026

Respectfully submitted,

N Christian

Nicholas Christian, Plaintiff, Pro Se

Cheryl Lam

Cheryl Lam, Ph.D., Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on August 24, 2026, the foregoing was filed with the Court and served on all parties who have appeared, by United States mail, first class, postage prepaid, and by email, addressed to counsel of record at their addresses of record.

N Christian

Nicholas Christian