Nicholas Keith Christian, Plaintiff In Pro Se
72 N. Buena Vista Ave.
San Jose, CA 95126
(408) 940-2424
christian.nicholask@gmail.com

Cheryl Lam, Ph.D., Plaintiff In Pro Se
72 N. Buena Vista Ave.
San Jose, CA 95126
(408) 421-7162
cheryl16@gmail.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS CHRISTIAN, an individual; and CHERYL LAM, Ph.D., an individual,<br>Plaintiffs,<br>v.<br><br>CITY OF SAN JOSE, a California municipal corporation; COUNTY OF SANTA CLARA, a California public entity; et al.,<br>Defendants. | Case No. 5:26-cv-03708-EJD<br>Date: October 15, 2026<br>Time: 9:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>**PLAINTIFFS' OPPOSITION TO THE MOTION OF DEFENDANTS GERARD F. KEENA II AND BRANDON M. CARR TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>**(DKT. NO. 35)** |

## TABLE OF CONTENTS

**Page**

Statement of Issues to Be Decided ........ 1
I. Introduction ........ 1
II. Statement of Facts ........ 2
III. Legal Standard ........ 4
IV. The Barton Doctrine Does Not Deprive This Court of Jurisdiction ........ 5
V. Rooker-Feldman Does Not Apply ........ 9
VI. Younger Supports, at Most, a Stay of Damages Claims ........ 10
VII. The Complaint States Claims Against Both Movants ........ 13
VIII. Quasi-Judicial Immunity Does Not Reach the Conduct Pleaded ........ 21
IX. What the Motion Does Not Address ........ 24
X. Leave to Amend ........ 24
XI. Conclusion ........ 25

# TABLE OF AUTHORITIES

**Page**

**CASES**


*AmerisourceBergen Corp. v. Roden*
495 F.3d 1143 (9th Cir. 2007)........................................................................................ 11

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
7 Cal. 4th 503 (1994)...................................................................................................... 19

*Ashcroft v. Iqbal*
556 U.S. 662 (2009).................................................................................................... 4, 13

*Baffert v. Cal. Horse Racing Bd.*
332 F.3d 613 (9th Cir. 2003)........................................................................................ 11

*Barton v. Barbour*
104 U.S. 126 (1881)................................................................................................ *passim*

*Bell v. City of Boise*
709 F.3d 890 (9th Cir. 2013).......................................................................................... 9

*Chua v. Ekonomou*
1 F.4th 948 (11th Cir. 2021).......................................................................................... 23

*Cox v. Mariposa County*
No. 1:19-cv-01105-AWI-BAM, Dkt. 42 (E.D. Cal. Apr. 6, 2020)..................................... 7

*Dennis v. Sparks*
449 U.S. 24 (1980).................................................................................................. 17, 24

*Erickson v. Pardus*
551 U.S. 89 (2007).......................................................................................................... 4

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*
544 U.S. 280 (2005).................................................................................................... 9, 10

*Gilbertson v. Albright*
381 F.3d 965 (9th Cir. 2004) (en banc)..................................................................... 10, 11

*Gilbrook v. City of Westminster*
177 F.3d 839 (9th Cir. 1999)........................................................................................ 16

*Hoffman v. City of San Diego*
No. 18cv02654 JAH (BGS), 2019 WL 1112046 (S.D. Cal. Mar. 8, 2019)........................ 8

*Howlett v. Rose*
496 U.S. 356 (1990)...................................................................................................... 24

*In re Crown Vantage, Inc.*
421 F.3d 963 (9th Cir. 2005)...................................................................................... 5, 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Harris*
590 F.3d 730 (9th Cir. 2009) .......... 22

*In re Nat'l Century Fin. Enters., Inc.*
426 B.R. 282 (Bankr. S.D. Ohio 2010) .......... 7

*Karim-Panahi v. L.A. Police Dep't*
839 F.2d 621 (9th Cir. 1988) .......... 14

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018) .......... 4, 17

*Kimes v. Stone*
84 F.3d 1121 (9th Cir. 1996) .......... 10, 17, 23, 24

*Kougasian v. TMSL, Inc.*
359 F.3d 1136 (9th Cir. 2004) .......... 10

*L.S. v. County of Santa Cruz*
No. 5:15-cv-03032-EJD, Dkt. 56 (N.D. Cal. May 26, 2016) .......... 11

*Lacey v. Maricopa Cnty.*
693 F.3d 896 (9th Cir. 2012) (en banc) .......... 16, 19, 21

*Leyva v. Certified Grocers of Cal., Ltd.*
593 F.2d 857 (9th Cir. 1979) .......... 12

*Lopez v. Smith*
203 F.3d 1122 (9th Cir. 2000) (en banc) .......... 24

*Malberg v. McCracken*
No. 5:22-cv-01713-EJD, Dkt. 61 (N.D. Cal. Mar. 31, 2023) .......... 10

*Martinez v. California*
444 U.S. 277 (1980) .......... 24

*McDaniel v. Blust*
668 F.3d 153 (4th Cir. 2012) .......... 7

*Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*
585 F.3d 1211 (9th Cir. 2009) .......... 8

*Mortg. Elec. Registration Sys., Inc. v. Koeppel*
No. 5:18-cv-03443-EJD, Dkt. 50 (N.D. Cal. June 21, 2019) .......... 9

*Mullis v. U.S. Bankr. Ct.*
828 F.2d 1385 (9th Cir. 1987) .......... 21

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Muhmoud v. City of San Jose*
No. 5:20-cv-08808-EJD, Dkt. 66 (N.D. Cal. May 16, 2022); Dkt. 142 (June 6, 2024).... 16, 25

*New Alaska Dev. Corp. v. Guetschow*
869 F.2d 1298 (9th Cir. 1989)........ 23

*Nguyen v. City of San Jose*
No. 5:21-cv-00092-EJD, Dkt. 103 (N.D. Cal. Aug. 20, 2024)........ 13, 25

*Noel v. Hall*
341 F.3d 1148 (9th Cir. 2003)........ 9

*People v. Riverside Univ.*
35 Cal. App. 3d 572 (1973)........ 18

*Quackenbush v. Allstate Ins. Co.*
517 U.S. 706 (1996)........ 11

*Regan v. Price*
131 Cal. App. 4th 1491 (2005)........ 23

*Sanchez v. County of Santa Clara*
No. 5:18-cv-01871-EJD, Dkt. 56 (N.D. Cal. Aug. 17, 2018)........ 11

*Sanchez v. Green Messengers, Inc.*
No. 5:20-cv-06538-EJD, Dkt. 81 (N.D. Cal. Mar. 31, 2023)........ 12

*Semaan v. Mosier*
No. G064385, slip op. (Cal. Ct. App. Feb. 5, 2026)........ 22, 23

*Simmons v. Sacramento Cnty. Superior Ct.*
318 F.3d 1156 (9th Cir. 2003)........ 17, 24

*Soo Park v. Thompson*
851 F.3d 910 (9th Cir. 2017)........ 16, 17

*Spitzer v. Aljoe*
734 F. App'x 457 (9th Cir. 2018)........ 6

*Spitzer v. Aljoe*
No. 13-cv-05442-MEJ (N.D. Cal. June 30, 2014; Oct. 1, 2015; Dec. 12, 2016)........ 6, 7

*Wyatt v. Cole*
504 U.S. 158 (1992)........ 23

*Yelp Inc. v. Paxton*
137 F.4th 944 (9th Cir. 2025)........ 11

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Younger v. Harris*
401 U.S. 37 (1971)........................................................ *passim*

**STATUTES**

United States Code
28 U.S.C. § 959(a)........................................................ 7, 8
42 U.S.C. § 1983........................................................ *passim*

California Code of Civil Procedure
§ 170.3(c)(5)........................................................ 8

**RULES**

Federal Rules of Civil Procedure
Rule 9(b)........................................................ 21, 22
Rule 12(b)(1)........................................................ 4
Rule 12(b)(6)........................................................ 1, 4, 19

Ninth Circuit Rules
Rule 36-3........................................................ 6, 13, 22, 23

California Rules of Court
Rule 3.1179(b)........................................................ 22
Rule 3.1183(a)........................................................ 18

Civil Local Rules (N.D. Cal.)
Civil L.R. 7-3(a)........................................................ 4

## STATEMENT OF ISSUES TO BE DECIDED

(1) Does the Barton doctrine deprive this Court of jurisdiction over the claims against the movants?

(2) Does the Rooker-Feldman doctrine bar those claims?

(3) Does Younger abstention require dismissal or a stay?

(4) Does the Complaint state claims against the movants under Rule 12(b)(6)?

(5) Are the movants entitled to quasi-judicial immunity on the pleadings?

(6) If any claim is dismissed, should leave to amend be granted?

## I. INTRODUCTION

The motion's theory is that Mr. Keena and Mr. Carr did nothing but what the Superior Court told them to do. On that theory they are beyond suit in any court, on any claim, forever, without leave of the judge whose orders they are alleged to have procured. The Complaint pleads something the motion never engages: that before any court told them anything, these movants helped build the receivership that would later employ them. The receiver's own sworn ledger, which the movants have now placed before this Court as Exhibit 10 to their request for judicial notice, opens on October 24, 2025, seventy-six days before the receivership action was filed, and nine days after Plaintiffs presented their government tort claims. Compl. ¶¶ 29-30, 36, 54; Dkt. 37-10. Its first entry records the City Attorney "preparing to file a TRO to assign a Receiver over the property." Dkt. 37-10 at 12.

By December 9, 2025, it records the plan: "posting and mailing notice on 12/15/25, and filing the complaint and ex parte application on 1/5/26." Id. The notice was posted on December 15. The receivership was built first; its statutory predicate was scheduled afterward. On January 6, 2026, two days before the City filed its case, Mr. Keena approved his own appointment papers. Compl. ¶ 37. And Buchalter's own invoice, inside the same Exhibit 10, bills the receivership estate for Mr. Carr's work eight days before the February 6 order approving his employment. On January 29, 2026, it bills "COMMUNICATIONS WITH COUNTY COUNSEL REGARDING EX-PARTE AND APPEAL." On January 30 it bills a "CONFERENCE WITH COUNTY COUNSEL REGARDING EX PARTE AND APPEAL OPPROSITIONS [sic]; REVIEW

OPPOSITION TO WRIT." The County of Santa Clara is not a party to the receivership action. The same invoice then bills 1.5 hours on January 31 to "DRAFT/REVISE MOTION TO EMPLOY COUNSEL," the motion that produced the February 6 order. Dkt. 37-10 at 23.

Every doctrine the motion invokes protects officers of the court for acts within a court-conferred role. None of them reaches backward to conduct undertaken before any role existed, and none of them protects participation in procuring the role by deception, which is what the Complaint alleges with dates, docket numbers, and the movants' own billing records. Barton governs suits over "acts done in the officer's official capacity"; quasi-judicial immunity covers "discretionary acts within the scope of the appointment"; the movants' newest authority expressly withholds immunity for "intentional misconduct, such as self-dealing." A man who is not yet a receiver has no official capacity, no appointment, and no scope. The motion should be denied. In the alternative, no claim should be dismissed without leave to amend, and any claim subject to Younger should be stayed, not dismissed, as the motion itself concedes. Mot. 16.

## II. STATEMENT OF FACTS

The facts are taken from the verified Complaint, which is accepted as true on this motion, and from the movants' own exhibits, which Plaintiffs cite for what they say.

On November 9, 2023, federal agents served a search warrant at Plaintiffs' home at 72 North Buena Vista Avenue, San Jose. Compl. ¶ 22. No agency charged a laboratory offense; the criminal case against Mr. Christian was dismissed on August 5, 2025, and Dr. Lam was never charged. Compl. ¶¶ 22-24. Plaintiffs have been excluded from the Property by government action since that day. Compl. ¶¶ 5, 84. The movants' Exhibit 1, the City's verified state-court complaint, pleads the County's cleanup order and the City's condemnation notice of December 5, 2023, and the exclusion since. Dkt. 37-1 ¶¶ 3-6, 41-44.

On October 15, 2025, Plaintiffs presented Government Code section 910 tort claims to the County and the City. Compl. ¶ 29. Nine days later, on October 24, 2025, the receiver's ledger opens: "Phone call with H. Odekirk from the City re her preparing to file a TRO to assign a Receiver over the property." Dkt. 37-10 at 12; Compl. ¶¶ 30, 36. Entries through December 9, 2025 record the title report and litigation guarantee, the declaration and proposed order to be

supplied by the City, and the schedule: "posting and mailing notice on 12/15/25, and filing the complaint and ex parte application on 1/5/26." Dkt. 37-10 at 12. The Notice and Order to Abate issued December 15, 2025. Compl. ¶ 32. The County declarations the City filed with its application had been executed on November 4 and November 20, 2025, before that notice existed. Dkt. 31-1, Exs. 3-4, at 32, 35.

On January 6, 2026, Mr. Keena sent the City Attorney's office his "approval of documents," the receiver's declaration and proposed order, and approved his own appointment papers. Dkt. 37-10 at 12; Compl. ¶ 37. The declaration filed with the ex parte application states that "[t]here has been no contract or agreement between the Plaintiff, Defendants, or any interested party in this matter and myself." Dkt. 37-2 ¶ 10. The City filed the receivership action and applied ex parte on January 8, 2026. Compl. ¶ 38; Dkt. 37-1. Plaintiffs' written opposition was docketed on January 13, 2026, the day the appointing order was filed. Dkt. 37-19 at 7; Dkt. 37-3; Compl. ¶¶ 38-41.

The receiver's ledger records Mr. Carr "as our counsel" on January 13 and 14, 2026. Dkt. 37-10 at 13-14. Buchalter's invoice, in the same exhibit, bills the estate for Mr. Carr's work on January 29, 30, and 31, 2026, including 1.5 hours on January 31 to "DRAFT/REVISE MOTION TO EMPLOY COUNSEL." Dkt. 37-10 at 23. The Superior Court approved Buchalter's employment on February 6, 2026. Dkt. 37-6. It signed the preliminary injunction on February 25, 2026. Dkt. 37-7.

On March 12, 2026, a $125,000 deed of trust was recorded against the Property. Compl. ¶ 42; Dkt. 37-8; Dkt. 37-9. On April 2, 2026, Mr. Keena and Defendant Vizcaino drilled the locks and entered. Compl. ¶¶ 43, 83. The First Report, containing Invoice No. 13335, was filed April 15, 2026; Plaintiffs filed a request for judicial notice of that invoice the same day. Dkt. 37-19 at 4. Plaintiffs filed this action on April 28, 2026. Dkt. 1. On March 5, 2026, before any of the later fee orders, Plaintiffs had given Mr. Carr written notice of the receiver's conflicts; he replied within the hour that the notice was "devoid of any facts." Christian Decl. Ex. 1.

## III. LEGAL STANDARD

A facial attack under Rule 12(b)(1) accepts the complaint's allegations as true and asks only whether they are sufficient to invoke jurisdiction. Under Rule 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences for Plaintiffs. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Pro se pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The Court may consider judicially noticeable court records for their existence and legal effect, but "may not assume the truth of an incorporated document in order to dispute the complaint's well-pleaded allegations." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018); accord Mot. 16.

**Objections to the request for judicial notice (Dkt. 37).** Stated here, as Civil L.R. 7-3(a) requires. Plaintiffs do not oppose notice of the existence, dates, and filing of Exhibits 1 through 19 as court records and recorded instruments. Plaintiffs object to notice of the truth of any fact recited within them. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); Khoja, 899 F.3d at 999. The objection matters here because the motion uses the noticed orders as proof that the underlying conduct was proper (e.g., Mot. 19: the courts "have sustained and advanced the receivership at every turn"), which is the truth-of-the-matter use the movants' own request disclaims. Dkt. 37 at 3. Plaintiffs separately object to Exhibit 4: the request indexes it as Plaintiffs' January 14, 2026 petition for writ of supersedeas, but the document filed is four pages, a cover page and two interior pages of a substantially longer petition. Dkt. 37 at 4-5. An excerpt offered without disclosure of its excerpting should be disregarded, or the complete document required, particularly from movants who invoke the rule against "selecting only portions of documents" that favor a party. Dkt. 37 at 4 (quoting Khoja, 899 F.3d at 1002). The same objections are stated in Plaintiffs' concurrent opposition to the special motion to strike.

Plaintiffs do not object to, and expressly join, the request that the Court consider Exhibit 10, including Invoice No. 13335 and the counsel billing records within it, for what they are and what they say, subject to Khoja's limit that the Court "may not assume the truth of an incorporated document in order to dispute the complaint's well-pleaded allegations." Khoja, 899

F.3d at 1003. The concurrently filed Declaration of Nicholas Christian attaches three documents, each already in the parties' hands, offered to answer the movants' account of the record and to show what any amendment would plead; Plaintiffs do not ask the Court to resolve any disputed fact against the movants on this motion.

## IV. THE BARTON DOCTRINE DOES NOT DEPRIVE THIS COURT OF JURISDICTION

A preliminary point of scope. The motion's heading announces that Barton "bars Plaintiffs' complaint." Mot. 12. It does not and could not: Barton concerns suits against a court-appointed officer and, on the movants' extension, his court-approved counsel. It has nothing to say about Plaintiffs' claims against the City, the County, or any municipal defendant, and no other defendant may borrow it. Whatever the Court decides here applies to these two movants only. Barton requires leave of the appointing court "before suit is brought against a receiver" for "acts done in the officer's official capacity and within the officer's authority as an officer of the court." In re Crown Vantage, Inc., 421 F.3d 963, 970-71 (9th Cir. 2005).

The doctrine polices the appointing court's control over its own receivership; it is not a general grant of personal immunity, and a dismissal under it is without prejudice, as the motion concedes. Mot. 14. It does not bar these claims, for three independent reasons.

**A. The gravamen of the claims is conduct outside any official capacity.** The liability-producing conduct pleaded against Mr. Keena begins before the receivership existed: participation in the seventy-six days of pre-filing coordination (Compl. ¶¶ 36, 54), and the January 6, 2026 approval of his own appointment papers, "two days before the City filed its case" (Compl. ¶ 37). There was no appointment, no estate, no oath, no bond, and no court supervision of anything. Acts done before appointment are not "acts done in the officer's official capacity," because there was no office. The same is true of Mr. Carr: the conduct pleaded against him is billing and coordination that preceded the February 6, 2026 order approving Buchalter's employment (Compl. ¶ 51; Dkt. 37-6), conduct his own invoice confirms. Dkt. 37-10 at 23 (entries of January 29-31, 2026).

The movants' authority for extending Barton to counsel involves professionals acting in a court-approved role; none of it requires leave to sue a lawyer for conduct predating the approval of any role.

Barton itself preserves the rule the movants omit: "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires." Barton v. Barbour, 104 U.S. 126, 134 (1881). The Complaint alleges exactly that: an encumbrance recorded and an entry forced under color of orders the defendants procured by deception, in a proceeding commenced without statutory authority. Compl. ¶¶ 35, 42-43, 83, 95. That allegation is specific. The City's verified complaint invokes Health and Safety Code section 11570, which authorizes closure of a building "used" for narcotics activity and provides no receiver over real property, and section 17980.7(c), which conditions any receiver on the owner's failure to comply "within a reasonable time" with a notice whose compliance deadline, on its face, was January 2, 2025, eleven months before the notice was posted. Compl. ¶¶ 35, 40; Dkt. 37-1 ¶¶ 11-12 & Prayer ¶¶ 9-10; Dkt. 31-1, Ex. 2 at 18. Section 17980.7(c) also requires proof, in the petition, that notice of the petition was posted and mailed at least three days before filing; the Appointing Order recites a section 17980.6 notice and no notice of the petition. Dkt. 37-3 at 3 ¶ 4. The order recites both statutes and "inherent equitable powers" as its authority. Id. ¶ 7.

Spitzer v. Aljoe, the motion's lead case, confirms the point rather than defeating it. The Ninth Circuit's decision there is an unpublished memorandum disposition without precedential effect under Ninth Circuit Rule 36-3, and on the movants' own account it turned on the fact that the claims challenged "actions within the scope of his duties as receiver." Mot. 13 (quoting 734 F. App'x 457, 459-60 (9th Cir. 2018)). The district court's orders in that case, which the movants also cite, explain why. That court quoted Barton's ultra vires passage as "[a]n exception to Barton," Spitzer v. Aljoe, No. 13-cv-05442-MEJ, Dkt. 145 at 4 (N.D. Cal. Oct. 1, 2015) (2015 WL 5737199), and held that under Barton and quasi-judicial immunity alike a plaintiff "must allege plausible facts supporting the same finding: namely, that [the receiver] acted in excess of his authority as receiver." Id. at 7.

It later explained that it "has never held Barton to be a 'bright line barrier.'" Spitzer v. Aljoe, No. 13-cv-05442-MEJ, Dkt. 261 at 9 (N.D. Cal. Dec. 12, 2016) (2016 WL 7188007). A plaintiff "need only allege how [the receiver's] alleged acts or omissions in this case went outside the scope of his statutory powers and the orders of the appointing court," and Barton carries an "exception already built into the Barton analysis." Id. at 9 & n.4. The Spitzers lost because every act they challenged came after the appointment, the appointing court had "specifically approved" the act they attacked, and their pleading showed only that the receiver "performed his duties poorly." Dkt. 44 at 6-7 (June 30, 2014); Dkt. 261 at 5. Nothing in Spitzer concerned a receiver's conduct before his appointment, or his participation in procuring it. This Complaint pleads both, with dates and documents.

The distinction is one the courts applying Barton to California nuisance receivers already draw. In Cox v. Mariposa County, the court held that a receiver's acts are presumed within his duties unless the plaintiff "alleges at the outset facts demonstrating otherwise," and recognized that "actions taken prior to the Order Appointing Receiver could be found to fall outside the scope of the Receivership," because a suit that "grounds his or her causes of action entirely on events that occurred prior to the commencement" of the officer's appointment "would not violate the Barton Doctrine." Cox v. Mariposa County, No. 1:19-cv-01105-AWI-BAM, Dkt. 42 at 9, 11 (E.D. Cal. Apr. 6, 2020) (quoting McDaniel v. Blust, 668 F.3d 153, 156-57 (4th Cir. 2012), and In re Nat'l Century Fin. Enters., Inc., 426 B.R. 282, 293 (Bankr. S.D. Ohio 2010)).

The plaintiff there lost the point for two reasons that do not exist here: his own complaint said the county, not the receiver, had sought the appointment, so his allegation was "directly contradicted by an allegation elsewhere in the Complaint," and his single pre-appointment allegation was "inextricably intertwined" with a complaint that was otherwise about post-appointment management. Id. at 11. This Complaint alleges the receiver's own participation in procuring his appointment as the gravamen of the claims against him, and the movants' own Exhibit 10 confirms it rather than contradicting it.

**B. Section 959(a).** Congress permits suit without leave against receivers "with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C.

§ 959(a). The movants' own authority applied the exception to a state-court receiver and let the suit proceed: in Medical Development International, the Ninth Circuit "conclude[d] that in the circumstances presented here the Receiver may be sued in his official capacity and he is not covered by judicial immunity," and that the plaintiff "was not required to obtain permission from the court that appointed the Receiver prior to filing suit against him, under 28 U.S.C. § 959(a)." Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab., 585 F.3d 1211, 1213, 1216-17 (9th Cir. 2009). The same opinion observes that "the policies underlying the Barton doctrine apply with greater force to bankruptcy proceedings than to other proceedings involving receivers." Id. at 1217 (quoting Crown Vantage, 421 F.3d at 971-72).

The movants cite the case once and quote neither holding. Mot. 14.

Their argument that a nuisance receiver does not carry on business also runs against their own exhibits, which describe the receiver borrowing at fifteen percent interest on a recorded security instrument, insuring, and staffing the Property. Dkt. 37-8 at 3; Dkt. 37-9; Dkt. 37-10 at 12-13. And the movants' own brief acknowledges that at least one court in this circuit has stated "that section 959(a) applied to a nuisance-abatement receiver." Mot. 14 (describing Hoffman v. City of San Diego, No. 18cv02654 JAH (BGS), 2019 WL 1112046, at *2 (S.D. Cal. Mar. 8, 2019)). On a facial motion, the exception's applicability cannot be resolved against Plaintiffs.

**C. The doctrine's purpose is not served here.** Barton exists so that a single court supervises litigation affecting the estate. The Complaint pleads, with record citations, that the appointing judge ruled on his own disqualification by striking Plaintiffs' verified statement, in violation of California Code of Civil Procedure section 170.3(c)(5), and that Plaintiffs' filings were kept from the docket. Compl. ¶ 94. Whether or not those allegations ultimately prevail, a jurisdictional doctrine grounded in comity toward the appointing court's supervision cannot be applied on the pleadings to extinguish federal claims that the supervision itself was compromised, allegations this Court must accept as true at this stage. At minimum, any dismissal would be without prejudice, as the movants concede (Mot. 14), and no claim that falls within Barton's own exception may be dismissed at all.

## V. Rooker-Feldman Does Not Apply

Rooker-Feldman is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). This Court has described the doctrine the same way: it is "narrow[]" and reaches only "'state-court losers' challenging state-court judgments rendered before the district court proceedings commenced." Mortg. Elec. Registration Sys., Inc. v. Koeppel, No. 5:18-cv-03443-EJD, Dkt. 50 at 9 (N.D. Cal. June 21, 2019). The doctrine does not apply here, three times over.

First, there is no state-court judgment. Two pages later, the movants themselves insist that the receivership action is an "ongoing state enforcement proceeding." Mot. 15-16. "When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court," because "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Exxon, 544 U.S. at 292. Such parallel litigation is governed by abstention and preclusion principles, not by Rooker-Feldman. Id. at 292-93; Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013). The motion's contrary authority for reaching interlocutory orders predates Exxon.

Second, the Complaint seeks damages from adverse parties for their own alleged wrongdoing, not appellate review of a judgment. A plaintiff who "asserts as a legal wrong an allegedly illegal act or omission by an adverse party" does not bring a forbidden de facto appeal. Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003). The movants quote this rule and then set it aside (Mot. 15); it disposes of the damages claims. The claims against these two movants are damages claims against them in their individual capacities. Compl., Prayer ¶¶ (d)-(e). The prayer's equitable paragraph asks for "[p]ermanent injunctive relief against further prosecution of the receivership on the current record, against further encumbrance, and against further entry." Compl., Prayer ¶ (c). None of that asks this Court to vacate, reverse, or modify an order of the Superior Court. The first clause is directed at the parties prosecuting the state action and is, under

Exxon, a question of abstention, addressed in Part VI; the second and third are directed at the defendants' own future conduct. The restitution the prayer seeks, Prayer ¶ (f), runs against the parties who received the money, and the fee orders under which they received it are interim orders that by their terms reserve the question of fraud. Dkt. 37-18 at 4; see Part VII.D, below.

The contrast with a case in which this Court applied the doctrine is instructive. There, the complaint's requested remedies included "[r]emoval of the Restraining Order and nullify it ab initio" and "[v]acate all judgements" in the state proceedings, which this Court called "a plaintiff attempting to blatantly end run an adverse state court judgment." Malberg v. McCracken, No. 5: 22-cv-01713-EJD, Dkt. 61 at 7 (N.D. Cal. Mar. 31, 2023). This Complaint's prayer contains no such request.

Third, the Ninth Circuit holds that Rooker-Feldman does not bar claims of extrinsic fraud: "Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud. Rooker-Feldman therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140-41 (9th Cir. 2004).

Kougasian itself involved an allegedly false declaration and concealed information, and the court permitted fraud and abuse-of-process damages claims to proceed alongside the set-aside claim. Id. The Ninth Claim is precisely such an allegation: a false declaration, a concealed deadline, and withheld filing information that "fraudulently prevented" Plaintiffs from opposing. Compl. ¶¶ 86-95; see Kimes v. Stone, 84 F.3d 1121, 1127 n.3 (9th Cir. 1996) (extrinsic fraud includes a party "deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense").

## VI. YOUNGER SUPPORTS, AT MOST, A STAY OF DAMAGES CLAIMS

The motion concedes the controlling rule: under Younger, "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004) (en banc); Mot. 16 (conceding the rule). The claims for relief against these movants are, in principal

part, damages claims against them in their individual capacities. Compl., Prayer ¶¶ (d)-(e). Under Gilbertson those claims may be stayed at most; none may be dismissed. The one equitable paragraph, Prayer ¶ (c), is addressed in Part V: its first clause is a question of abstention, and its second and third clauses ask this Court to restrain these movants' own future acts of encumbrance and entry, not any act of the Superior Court.

Younger does not reach them at all. Abstention is "an 'extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it.'" Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996). Its fourth element asks whether the federal action "would actually 'enjoin the [ongoing state] proceeding, or have the practical effect of doing so.'" AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1149 (9th Cir. 2007). Applying that standard in a case brought against this County and this City, this Court held the fourth element "vital and indispensable," the doctrine "stringently applied," and "potential interference is not enough." Sanchez v. County of Santa Clara, No. 5:18-cv-01871-EJD, Dkt. 56 at 10 (N.D. Cal. Aug. 17, 2018); accord L.S. v. County of Santa Cruz, No. 5:15-cv-03032-EJD, Dkt. 56 at 8 (N.D. Cal. May 26, 2016).

A damages judgment against a private receiver and his lawyer for their own pre-appointment conduct enjoins nothing. The state courts may rule on the matters before them "independent of the action in this Court." L.S., Dkt. 56 at 6.

As to equitable relief, Plaintiffs preserve their position that Younger's exceptions apply. A party "may avoid application of the Younger abstention doctrine if 'the state proceeding is motivated by a desire to harass or is conducted in bad faith.'" Sanchez, Dkt. 56 at 8. In this context, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Yelp Inc. v. Paxton, 137 F.4th 944, 951 (9th Cir. 2025) (quoting Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 621 (9th Cir. 2003)). The Complaint pleads the civil enforcement counterpart in detail: a proceeding commenced without its statutory predicate, for retaliation and liability-avoidance rather than abatement, with the state forum's ordinary corrective processes compromised. Compl. ¶¶ 36, 53-55, 77, 79, 94.

The motion describes the April 30 order as having "found the state proceeding ongoing, the State's interest in it important, and Plaintiffs free to raise their federal claims there," and as having "concluded that Younger barred it from enjoining the receivership action." Mot. 16; see Mot. 11 (the Court denied the application "abstaining under Younger"). On the third element, the order states: "this Court is unaware of any reason, and Plaintiffs do not allege, that Plaintiffs cannot raise their federal question claims in the ongoing Superior Court Action." Dkt. 10 at 4. Its disposition is that the Court "DENIES Plaintiffs' ex parte motion for a TRO at this time," and it orders service "so that Defendants may answer or otherwise respond to the complaint." Dkt. 10 at 7. A statement that an unopposed application did not allege a point is not a finding on that point, and an order denying interim relief "at this time" decides nothing for a Rule 12 motion filed four months later.

This Court's April 30 order addressed a temporary restraining order on an emergency record; it did not, and at the pleading stage could not, adjudicate the truth of these allegations. That order issued two days after the case was filed, before any defendant had been served or appeared, on an ex parte application to which no exhibits were attached; the documents it could not consider, including Invoice No. 13335, are now before the Court as the movants' own Exhibit 10. Dkt. 10 at 1, 6; Dkt. 37-10. On a Rule 12 motion the Complaint's allegations are accepted as true. If the Court nonetheless applies Younger to the equitable claims, the damages claims proceed or are stayed; none is dismissed.

Nor would a discretionary stay be warranted. A stay "should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 864 (9th Cir. 1979). Where a stay would not dispose of the whole action, this Court weighs the Landis factors, and granted such a stay where there was "no allegation of ongoing violations, and Plaintiff is not seeking injunctive relief." Sanchez v. Green Messengers, Inc., No. 5: 20-cv-06538-EJD, Dkt. 81 at 7 (N.D. Cal. Mar. 31, 2023). Every one of those considerations points the other way here. The Complaint pleads an ongoing exclusion from Plaintiffs' home and

an ongoing encumbrance of it (Compl. ¶¶ 42-43, 84), and seeks injunctive relief against both (Prayer ¶ (c)).

The claims against these movants concern conduct before the receivership existed, which no state court is adjudicating. And the movants identify no date by which the state proceeding will end; the register of actions they filed shows the City's own discovery motion set for hearing on January 22, 2027. Dkt. 37-19 at 4.

## VII. THE COMPLAINT STATES CLAIMS AGAINST BOTH MOVANTS

**A. Personal participation is pleaded.** The motion's refrain that the Complaint pleads only against "Defendants" collectively understates the pleading it attacks. As to Mr. Keena: the pre-filing engineering and his approval of his own appointment papers (Compl. ¶¶ 36-37); membership and role in the agreement (Compl. ¶¶ 53-55); the recording of the $125,000 deed of trust "without notice, without consent, and without an evidentiary hearing" (Compl. ¶ 42); and the April 2, 2026 forced entry, drilling the locks of the Property, pleaded jointly with Defendant Vizcaino (Compl. ¶¶ 43, 83). As to Mr. Carr: billing the estate for pre-approval work and "continuous communication with City and County personnel throughout the pre-filing coordination period" (Compl. ¶ 51; see Compl. ¶¶ 3, 54), and membership in the agreement (Compl. ¶ 53). These are specific acts, by named actors, with dates. Iqbal requires nothing more at the pleading stage.

This Court applied that standard to a complaint against the City of San Jose that pleaded less about each defendant than this one, only that supervisors had notice of an employee's conduct and did nothing, and held: "Given the liberal requirements of notice pleading, no further specificity is expected of the complaint." Nguyen v. City of San Jose, No. 5:21-cv-00092-EJD, Dkt. 103 at 22 (N.D. Cal. Aug. 20, 2024) (denying the City's third motion to dismiss).

**B. The conspiracy is pleaded with the required specificity.** A § 1983 conspiracy requires an agreement or meeting of the minds, specific facts supporting it, and a resulting deprivation. The Complaint identifies the participants by name (Compl. ¶ 53), the object (taking the Property and extinguishing anticipated tort liability through a receivership neither statute authorized, Compl. ¶¶ 53, 79), the mechanism (an engineered "procedural emergency," Compl. ¶

55), the timeline (tort claims presented October 15, 2025; the receiver's ledger opens October 24, 2025; filing on January 8, 2026, Compl. ¶¶ 29-30, 36, 38), and the documentary evidence, Invoice No. 13335, pleaded by number (Compl. ¶ 54). This is not the "mere allegation of conspiracy without factual specificity" that Karim-Panahi condemns; it is a dated, invoiced chronology.

The movants' own Exhibit 10 carries that chronology forward in their own hand. Buchalter's invoice records Mr. Carr's "COMMUNICATIONS WITH COUNTY COUNSEL REGARDING EX-PARTE AND APPEAL" on January 29, 2026. It records a "CONFERENCE WITH COUNTY COUNSEL REGARDING EX PARTE AND APPEAL OPPROSITIONS [sic]; REVIEW OPPOSITION TO WRIT" on January 30, 2026. It records "COMMUNICATIONS WITH COUNTY COUNSEL REGARDING 2/24 HEARING" on February 23, 2026. Dkt. 37-10 at 23, 25. The receiver's own invoice shows the same coordination on the service side, and it matters because the office being served was not a party to the case: on January 20, 2026 it records "Update proof of service to include Sonia Wills" and an update to "the contact database with the contact information for the Santa Clara County Department of Environmental Health contacts." Dkt. 37-10 at 14.

The County of Santa Clara is not a party to the receivership action; its own Deputy County Counsel wrote to the receiver's office that the County had been served a report "in a case that the County is not a party to," and Defendant Wills answered that she had been "advising County Environmental Health" on the matter and asked the receiver's office to "continue to include me as the County Counsel's Office contact for this matter." Dkt. 38-1, Ex. 3 at 15-17. Counsel for a court's neutral receiver conferred with the lawyers for a non-party government defendant about the ex parte application and the appeal, before any court had approved his employment. That is the "continuous communication with City and County personnel" pleaded at paragraphs 51 and 54, documented by the movants themselves.

The ledger also shows what the agreement was for. The entries are the receiver's own, in his own words. On August 18, 2025, County Counsel Wills had written to Plaintiffs that the County would "oppose" any challenge to its cleanup order and that the time to challenge it "has

long since expired." Dkt. 38-1, Ex. 2 at 7. Plaintiffs presented their government tort claims on October 15, 2025. Compl. ¶ 29. Nine days later the ledger opens: October 24, 2025, "Phone call with H. Odekirk from the City re her preparing to file a TRO to assign a Receiver over the property." Dkt. 37-10 at 12. On November 3, 2025, the receiver asked for "a Title Report and Litigation Guarantee," and reviewed an email that "H. Odekirk will provide Declaration and Proposed Order to Receiver when the City is ready to file." Id.

On November 12, 2025: "moving forward and suing the lienholder." Id. On December 9, 2025, the receiver reviewed correspondence from Ms. Odekirk "re getting all the declarations back, posting and mailing notice on 12/15/25, and filing the complaint and ex parte application on 1/5/26." Id. The Notice to Abate, the statutory predicate on which the movants now rely (Mot. 15-16), was posted on December 15, 2025, on the schedule the ledger had recorded six days earlier.

On January 6, 2026, the receiver sent Ms. Odekirk his "approval of documents," the "Declaration of Receiver and Proposed Order" for a case the City would file on January 8, under a number it withheld until the order was signed. Id. The order he approved conferred on him a lien with "super-priority as to any preexisting private lien(s)" and authority to record "a deed of trust with the power of sale," the lien perfected "upon the recordation of this Order." Dkt. 37-3 at 11 ¶¶ 13-14, at 18. The encumbrance was designed in before the filing, not discovered after it. On January 12, 2026, the day the appointing order was signed, the receiver met by Teams with Ms. Odekirk and the City "to discuss case, hearing date, Notice to Abate, and the County's Methamphetamine Contaminated Property Clean Up Order." Dkt. 37-10 at 13. On January 13, 2026, the day the case was assigned to Department 16, his staff billed for "Court information for Department 16 judicial realignment." Id.

On January 20, 2026, the receiver's office added Ms. Wills to its proof of service. Dkt. 37-10 at 14. On January 29 and 30, 2026, Mr. Carr conferred with County Counsel about the ex parte and the appeal. Dkt. 37-10 at 23.

That is the pleaded agreement, with its object and its mechanism, in the movants' own hand: a receivership planned before any notice to abate existed, with the receiver's declaration

and the proposed order to be supplied by the City Attorney, the notice to be posted on a date chosen to precede the filing, and the County that had promised to "oppose" Plaintiffs kept on the receiver's service list from the first weeks. The Complaint calls this a pivot from County administrative enforcement to City-led receivership, directed by County Counsel, after Plaintiffs' tort claims. Compl. ¶¶ 36, 50, 53-55, 79. The ledger calls it the same thing, entry by entry. The ex parte application is where every defendant's conduct meets: the City Attorney drafted it, the receiver approved it before the City filed it, his counsel conferred about it with the County, and the County's order supplied its premise.

A conspiracy is pleaded by facts from which an agreement may be inferred. Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999). These facts do not require an inference. They are a calendar.

Nor must Plaintiffs plead every participant's every act: it suffices that each defendant shared the "common objective," for "[d]irect evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence." Gilbrook, 177 F.3d at 856-57 (upholding a section 1983 conspiracy verdict). And the conspiracy does the work the movants say it cannot: it "enlarge[s] the pool of responsible defendants," making each participant "liable for the unconstitutional actions of the party with whom he has conspired." Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

The pleading standard for a conspiracy claim is relaxed where "the relevant facts are known only to the [D]efendant[s]." Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017). And a defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. Gilbrook, 177 F.3d at 856-57. This Court applied both rules to the same argument by the same City. The City defendants in Muhmoud v. City of San Jose contended that the complaint was "silent as to any details of an alleged agreement." The Court answered that although it "may be conceivable" that the defendants were "carrying out their required duties," it was "equally plausible at this stage" that they "were engaging in the unlawful scheme Plaintiff describes." Muhmoud v. City of San

Jose, No. 5:20-cv-08808-EJD, Dkt. 142 at 3, 7-8 (N.D. Cal. June 6, 2024) (quoting Soo Park, 851 F.3d at 928) (granting in part and denying in part; sustaining the section 1983 conspiracy claim against the City).

The movants' version of the same argument is that they did nothing but what the Superior Court told them to do. See Part I, above. That is the "required duties" explanation, and on this motion it is at most equally plausible. Here it is less so, because the relevant facts are not known only to the defendants. They are in the defendants' own invoices.

**C. Mr. Carr acted under color of state law as pleaded.** The motion's authority, Simmons, holds that conclusory conspiracy allegations against a private lawyer do not suffice. The controlling rule for non-conclusory allegations comes from the Supreme Court: "Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions," and "it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co-conspirators." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). The Ninth Circuit applies Dennis to lawyers: "private parties who corruptly conspire with a judge in conjunction with the judge's performance of an official judicial act are acting under color of state law for the purpose of § 1983." Kimes, 84 F.3d at 1126 (reversing dismissal of claims against attorneys alleged to have conspired with a Santa Clara County Superior Court judge).

The Complaint pleads joint engagement in detail, not in conclusion. See Part VII.B, above.

**D. The movants' Invoice No. 13335 argument defeats itself.** The motion announces it as an "indisputable fact" that Invoice No. 13335 "does not include any time counsel billed" and therefore that the only allegation against Mr. Carr is unsupported. Mot. 18. Three answers. First, the argument is procedurally barred by the movants' own authority: incorporation by reference may not be used "to dispute the complaint's well-pleaded allegations." Khoja, 899 F.3d at 1003; Mot. 16. Second, it misstates the exhibit. Exhibit 10, the document the movants asked this Court to consider "for what it is and what it says" (Dkt. 37 at 4), contains both the receiver's invoice

and Buchalter's own invoices for "Counsel to the Receiver." Dkt. 37-10 at 6 (report, identifying Exhibit C as counsel's work records), 23 (Buchalter Invoice No. 1484446).

Buchalter's invoice bills the estate for Mr. Carr's time on January 29, 30, and 31, 2026, before the February 6, 2026 order approving his employment (Dkt. 37-6). The entries include 1.5 hours to draft the very motion seeking that approval. The receiver's invoice, for its part, documents the coordination the Complaint pleads: entries referencing Mr. Carr as counsel begin January 13-14, 2026, weeks before any court approved his role. Dkt. 37-10 at 13-14. Third, at the pleading stage all reasonable inferences run to Plaintiffs; a billing record showing counsel billing the estate for pre-approval work in the same served report substantiates, not refutes, paragraph 51.

The exhibit shows one thing more: the pre-approval work was not merely recorded, it was billed to Plaintiffs' estate for payment. Exhibit 10 is, by its own title, a report "and Notice of Intent to Pay Receiver's Fees and Expenses." It reports counsel fees of $2,702.50 through February 28, 2026, a figure that includes the January entries predating counsel's court approval. Dkt. 37-10 at 6, 23. The movants then sought and obtained payment from the estate over Plaintiffs' objections; of the amount requested, the court authorized $2,370.50. Dkt. 37-18 at 5 (authorizing payment including "$2,370.50 for the Receiver's counsel's fees"). Under the conspiracy pleaded, each fee application and each payment taken is a further act in furtherance. The movants did not merely participate in constructing the receivership. They have claimed and collected its proceeds from the estate of the people it dispossessed, adopting the arrangement by accepting its fruits.

Two features of their own fee order confirm that nothing about it forecloses these claims. The order approves fees on a standard that reserves the very issue pleaded here, "absent the evidence of fraud, unfairness, or misconduct." Dkt. 37-18 at 4 (citing People v. Riverside Univ., 35 Cal. App. 3d 572, 586 (1973)). And under California Rules of Court, rule 3.1183(a), quoted in the same order, "[i]nterim fees are subject to final review and approval by the court," which "retains jurisdiction to award a greater or lesser amount." Dkt. 37-18 at 4. Interim fee orders adjudicate nothing finally, least of all the fraud they expressly reserve.

The related argument that Plaintiffs “were obligated to file an objection to the January fees, which they did not do,” citing “RJN Ex. 19 (showing no objection filed by Plaintiffs on the Court’s docket)” (Mot. 18), is a merits defense resting on the state of a state-court docket, raised on a Rule 12(b)(6) motion. It also misstates the exhibit it cites.

Exhibit 19 shows the First Report, the document containing the January fees, filed with the Superior Court on April 15, 2026, and on the same day a filing by Plaintiffs directed at that report’s invoice: “Request: Judicial Notice… of Receiver’s Invoice #13335,” repeated on April 20 and May 4, 2026. Dkt. 37-19 at 4. The same register shows Plaintiffs’ “Opposition Ex Parte” docketed January 13, 2026, the day the ex parte order issued (id. at 7), two ex parte applications by Plaintiffs on April 3, 2026 (id. at 5), Plaintiffs’ May 22 objection to the April report (id. at 4), and Plaintiffs’ July 15 opposition on which the City’s ex parte application was denied the next day (id. at 2). The Complaint pleads, in addition, that other filings were kept from that docket (Compl. ¶ 94), an allegation taken as true here.

Plaintiffs also objected, in writing, to Mr. Carr himself. On March 5, 2026, Plaintiffs gave Mr. Carr formal notice that the receiver had engaged in “unauthorized ex parte communications” incompatible with the duties of a neutral officer of the court, and invited the receiver to seek recusal. Mr. Carr answered within the hour that the notice was “devoid of any facts.” Christian Decl. Ex. 1. The movants’ own Exhibit 10 now supplies the facts.

**E. The constitutional theories are adequately pleaded against these movants.** The motion argues Plaintiffs’ exclusion from the Property “predates the receivership” and “is not attributed to either Receiver Defendant.” Mot. 19-20. Paragraph 83 attributes the April 2, 2026 drilling of the locks to Mr. Keena by name, and paragraph 84 pleads the ongoing exclusion as a continuing seizure that the receivership now administers day by day. And the timeline argument misunderstands conspiracy liability: a defendant who joins a scheme is “liable for the unconstitutional actions of the party with whom he has conspired,” Lacey, 693 F.3d at 935, and is “responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity,” Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994).

The Complaint pleads that the movants joined a scheme whose object was, precisely, to perpetuate and launder the pre-existing exclusion through a receivership. Compl. ¶¶ 53-55, 79. That the exclusion began before they joined does not sever them from it; it is what they joined.

The Fourth Amendment theory does not evaporate because the entry was made under an order; the Complaint alleges the order was procured on false predicates known to the procurers (Compl. ¶ 83), and on this motion that allegation is true. The takings argument fails for the same reason: the rule that no compensation is owed for abating a nuisance presupposes a lawful abatement, and the Complaint pleads the enforcement was ultra vires from its statutory root (Compl. ¶¶ 35, 57, 93; see Part IV.A, above). Whether the movants ultimately defeat these theories is a question to be decided on evidence, not on the pleadings.

**Procedural due process.** The motion answers the procedural due process theory by pointing to the February 24, 2026 hearing and the objections heard since. Mot. 20. The Complaint pleads what happened before that hearing: an ex parte application built on a false representation of non-cooperation, made after Ms. Odekirk had been served with Plaintiffs' written opposition and demand for hearing details more than twenty-four hours before she filed, with the docket number, envelope number, department, and hearing time withheld so that no opposition could reach the court (Compl. ¶¶ 38-41, 58), followed by possession taken under the ex parte order and, on March 12, 2026, a $125,000 deed of trust recorded against the Property the day before the confirming order was entered (Compl. ¶¶ 42, 59; Dkt. 37-9; Dkt. 37-7). A post-deprivation hearing does not retroactively supply pre-deprivation process, and a hearing conducted within a proceeding alleged to have been engineered by concealment is itself part of what the Complaint challenges. Compl. ¶¶ 86-95. On this motion those allegations are true.

**First Amendment retaliation.** The motion says Plaintiffs plead no adverse action taken because of protected activity. Mot. 20. The Complaint pleads the tightest of sequences: their government tort claims presented October 15, 2025, and the receiver's own ledger opening nine days later with the coordination that produced the receivership (Compl. ¶¶ 29-30, 36, 53-55), pleaded as a scheme whose object was to extinguish that anticipated liability (Compl. ¶ 79).

Retaliatory timing and motive are quintessential fact questions; a nine-day interval between protected petitioning and the start of the machinery pleaded to punish it is not a pleading failure.

**Denial of access to courts (Fifth Claim).** The motion asserts the Complaint pleads "no facts about anything the Receiver or his counsel did to deny Plaintiffs access to any court." Mot. 21. The Complaint incorporates into every claim the allegations that the conspirators' scheme operated by keeping Plaintiffs out of court at the decisive moment, through the withheld docket information and the false representation that no docket number existed while the conspirators' own filings bore it (Compl. ¶¶ 39, 41, 58, 92), and that the scheme succeeded in producing "every state-court order on which Defendants now act" (Compl. ¶ 95). Each movant's liability for that architecture follows from the conspiracy pleaded at paragraphs 53 through 55. Lacey, 693 F.3d at 935.

**F. The Ninth Claim.** As set out in the concurrent opposition to the special motion to strike, the Ninth Claim is a federal fraud-on-the-court claim; California's rule against a freestanding state damages tort is beside the point, and the Rule 9(b) particulars are pleaded: the false "uncooperative" representation made while Plaintiffs' written opposition sat served (Compl. ¶¶ 38, 90), the concealed impossible deadline (Compl. ¶¶ 40, 88, 91), the withheld docket and envelope numbers against a declaration bearing both (Compl. ¶¶ 41, 92), and these movants' coordinated participation (Compl. ¶¶ 37, 51, 53-54, 89). A conspirator is liable for the scheme he joins; he need not have signed the declarations himself.

## VIII. Quasi-Judicial Immunity Does Not Reach the Conduct Pleaded

The function test governs: immunity attaches to the performance of court-conferred functions, and a receiver "derives his immunity from the judge who appointed him." Mot. 22 (quoting Mullis). Three limits, each drawn from the movants' own authorities, dispose of the defense at this stage.

**First, there was no appointment when the core conduct occurred.** Derived immunity presupposes a derivation. Mr. Keena's January 6, 2026 declaration and the pre-filing coordination preceded the January 12-13, 2026 appointment; Mr. Carr's January billing preceded the February 6, 2026 approval of his employment. So did his firm's conduct as counsel: on February 4, 2026,

Buchalter gave ex parte notice, on the receiver's behalf, of the application to employ itself. Christian Decl. Ex. 2. The movants' counsel-immunity conditions, drawn from In re Harris, require that the acts be "within the scope of the authority the appointing court conferred," disclosed, and approved. Mot. 23. No authority had been conferred on either movant when the pleaded conduct began.

The motion's answer, that reviewing and signing an appointment declaration "is what California Rules of Court, rule 3.1179(b), contemplates" (Mot. 17), misstates what the rule does. Rule 3.1179(b) is a prohibition: the nominating party "may not, directly or indirectly, require any contract, agreement, arrangement, or understanding" with its intended receiver, "and the receiver may not enter into any such contract, arrangement, agreement, or understanding," concerning, among other enumerated subjects, "[h]ow the receiver will administer the receivership," "[w]ho the receiver will hire, or seek approval to hire," and "[w]hat capital expenditures will be made on the property." Cal. R. Ct. 3.1179(b)(2)-(4). The declaration swore that no such agreement or understanding existed.

The movants' own Exhibit 10 contradicts that oath. Its ledger records, before and immediately upon filing, the designation of a project manager and field agent for the Property, the selection of Mr. Carr "as our counsel" weeks before any court approved the employment, and the identification of the lender for Receiver's Certificate No. 1, all coordinated with the nominating parties. Dkt. 37-10 at 13-14; Compl. ¶¶ 36-37, 54. Taken as true, the pleading describes not compliance with rule 3.1179(b) but a sworn denial of the very arrangements the rule prohibits. That is the deception pleaded, and no rule of court confers immunity for it. A receiver "is the agent of the court and not of any party." Cal. R. Ct. 3.1179(a); Mot. 23. The immunity the movants claim rests on that neutrality. A receiver who helped the nominating party plan the petition before any court appointed him was never neutral, and the immunity does not reach him.

**Second, the movants' newest authority expressly excludes this conduct.** Semaan v. Mosier holds that receiver immunity "is limited to discretionary (nonministerial) acts and decisions" and does not extend "to intentional misconduct, such as self-dealing, that is not taken in the receiver's quasi-judicial capacity or in the complete absence of all jurisdiction." Semaan v.

Mosier, No. G064385, slip op. at 14-15 (Cal. Ct. App. Feb. 5, 2026, as modified on denial of rehearing Feb. 26, 2026) (cited by the movants as 118 Cal. App. 5th 460) (citing Regan v. Price, 131 Cal. App. 4th 1491, 1496 (2005)). The Ninth Circuit's rule is parallel: New Alaska extended immunity for discretionary management, and in the same opinion denied it for alleged theft of estate assets, because "the 'precise act' of a receiver pilfering corporate assets is not normally performed by a court-appointed receiver," and "no court is empowered to permit a receiver to steal corporate assets." New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1304, 1306 (9th Cir. 1989).

The Complaint alleges participation in engineering one's own appointment to capture an estate. Compl. ¶¶ 36-37, 53-55, 79. That is self-dealing outside any quasi-judicial function. The motion cites Semaan twice and never mentions its carve-out.

**Third, the pleading requirement the movants invoke is satisfied.** New Alaska requires a plaintiff suing a receiver to "allege the absence of judicial immunity." Mot. 22. The Complaint does: it alleges conduct before any appointment existed, conduct outside any conferred authority, and an appointment procured by the defendants' own scheme. Compl. ¶¶ 36-37, 51, 53-55, 89, 95. The movants' own out-of-circuit authority illustrates the difference: in Chua, immunity attached because the plaintiff "d[id] not allege that [the receiver] acted outside the scope of his authority as receiver; to the contrary, he alleged in his complaint that [the receiver] acted 'with the approval of the [c]ourt.'" Chua v. Ekonomou, 1 F.4th 948, 955 (11th Cir. 2021). This Complaint alleges the opposite. Whether those allegations are ultimately proven is not a Rule 12 question; allegations of this kind are exactly how the "absence of immunity" is alleged.

And for the federal claims, private parties alleged to conspire with state actors receive no absolute immunity at all. Kimes, 84 F.3d at 1128 (citing Wyatt v. Cole, 504 U.S. 158, 164-69 (1992)).

**The Appointing Order's immunity paragraph adds nothing.** The motion closes by quoting the order it defends: the receiver and his professionals "are immune from any personal liability to the furthest extent allowed under" various statutes "and other applicable law." Mot. 24

(quoting Dkt. 37-3 at 18). An immunity coextensive with "the furthest extent allowed" by law is, by its terms, no broader than the law, and the law's limits are set out above.

As to the federal claims, the point is more fundamental: "The elements of, and the defenses to, a federal cause of action are defined by federal law," Howlett v. Rose, 496 U.S. 356, 375-76 (1990), and conduct "wrongful under 42 U.S.C. § 1983… cannot be immunized by state law," Martinez v. California, 444 U.S. 277, 284 & n.8 (1980); accord Kimes, 84 F.3d at 1126 ("the existence of § 1983 immunities is a matter of federal law"). A defendant cannot draft his own immunity into a proposed order, obtain its signature ex parte, and tender it to a federal court as a defense to the claim that the order was procured by fraud.

## IX. What the Motion Does Not Address

Several points that decide this motion are absent from it.

**The pre-appointment allegations.** The motion states that "[t]he complaint does not allege that the Receiver or his counsel acted outside the authority the Appointing Order conferred; it alleges that the order itself was wrongly obtained," citing Compl. ¶¶ 2, 83, 95. Mot. 22. It does not cite paragraphs 36, 37, 51, or 54, which allege the seventy-six days of pre-filing coordination, the January 6, 2026 approval of the appointment papers, and counsel's pre-approval billing. Those are the allegations on which the claims against these movants rest, and the motion's Barton and immunity arguments do not engage them.

**Dennis v. Sparks.** The motion's color-of-law argument as to Mr. Carr rests on Simmons alone. Mot. 19. It does not cite Dennis v. Sparks, 449 U.S. 24 (1980), or Kimes, 84 F.3d at 1126, which hold that private parties who conspire with state actors act under color of law, and that the state actor's immunity "does not change the character" of the private party's conduct.

## X. Leave to Amend

Dismissal without leave requires that the pleading "could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). The movants' futility argument rests on the proposition that court orders authorized everything alleged. That proposition disputes the Complaint's central allegations rather than accepting them, and it fails for the reasons above.

If the Court finds any claim deficient as pleaded, Plaintiffs can amend, among other things, to plead the Exhibit 10 billing chronology in further detail, including counsel's January and February conferences with County Counsel (Dkt. 37-10 at 23, 25); the March 5, 2026 notice to Mr. Carr and his response (Christian Decl. Ex. 1); the County's continuing direction of the receiver's distribution list in a case to which it says it is not a party (Dkt. 38-1, Ex. 3; Christian Decl. Ex. 3); to conform the Seventh and Ninth Claims' federal character expressly; to plead the receiver's September 4, 2026 status report to the Superior Court, which states that rehabilitation is not economically feasible and that an as-is sale "may be the best path forward," against a statute whose receiver exists to rehabilitate, Cal. Health & Safety Code § 17980.7(c)(2), (c)(4)(C)-(G); and to plead the published League of California Cities paper co-authored by the receiver's associate, which describes the two-notice procedure section 17980.7(c) requires and which the City did not follow; and to plead the course of the receiver's other San Jose receiverships, each of which has proceeded to an option, a sale, or a sale motion rather than a rehabilitation and return of the property.

Leave should be granted. That standard has been met with leave in this Court's own cases: in Muhmoud, the Court found a pending motion to dismiss moot and granted leave to amend, Muhmoud, Dkt. 66 at 2 (N.D. Cal. May 16, 2022), and the amended pleading went on to state a section 1983 conspiracy claim against the City, Muhmoud, Dkt. 142 at 8; in Nguyen, the City's third motion to dismiss was denied after two rounds of amendment with leave. Nguyen, Dkt. 103 at 1, 24.

## XI. CONCLUSION

The motion asks this Court to hold, on the pleadings, that two defendants who are alleged to have helped construct a receivership before it existed are forever immune from answering for it, in any forum, because the construction succeeded. Neither Barton, nor Rooker-Feldman, nor Younger, nor any immunity goes that far. The motion should be denied. In the alternative, any claim the Court finds subject to Younger should be stayed rather than dismissed, and any pleading deficiency should be met with leave to amend.

Respectfully submitted,

Dated: September 14, 2026

______________________

Nicholas Christian, Plaintiff, Pro Se

______________________

Cheryl Lam, Ph.D., Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to counsel of record for all parties who have appeared. Fed. R. Civ. P. 5(b)(2)(E); Civil L.R. 5-1(h)(1).

______________________

Nicholas Christian